A99A0910, A99A0911. INGLETT et al. v. THE STATE (two cases).
(521 SE2d 241)

PHIPPS, Judge.

Roger Inglett, William Gill, and Gail Inglett were tried jointly, convicted of various drug offenses, and given respective sentences of ten, fifteen, and twenty years. In addition, Roger and Gail Inglett were each given a $200,000 fine. In Case No. A99A0910, defendants appeal their convictions. In Case No. A99A0911, they appeal the denial of their appeal bond.

Lieutenant Grizzard of the Troup County Sheriff's Department was informed that a package, containing 169.2 grams of methamphetamine and having a street value of approximately $56,000, had been intercepted at Hartsfield Atlanta Airport. The package was being shipped by United Parcel Service to a residential address in LaGrange, Georgia, and was addressed (euphemistically) to "Mr. Head." Lieutenant Grizzard arranged for a controlled delivery of the package.

Gail Inglett appeared at the door of the house and signed for the package with the remark, "We've about give up on you all." She was placed under arrest as she was reentering the residence. A team of officers being led by Investigator White then conducted a "protective sweep," i.e., limited search, of the house primarily to ensure officer safety by detecting the presence of other occupants. Officers Grizzard and White testified that as Gail Inglett was opening the door, they observed another individual inside the house. After White entered the house, officers found Gail Inglett's son Roger Inglett and a Ms. Kelly in the living room and handcuffed them.

Grizzard testified that he and Officer Hamrick informed Gail Inglett of her *Miranda* rights and asked for her consent to search the house. She agreed to speak to the officers and later told them that Darryl Weathers had provided her with methamphetamine if she would take delivery of the package. Although she verbally consented to a search of the house, she would not sign a consent form.

As a result, Grizzard left the house to secure a search warrant. To prevent possible destruction of evidence before the warrant was obtained, the officers seized a marijuana cigarette butt and suspected methamphetamine found in plain view in the living room. After issuance of the warrant, the officers seized evidence both in and out of plain view throughout the house. This evidence consisted of marijuana, methamphetamine, articles used to ingest these substances, and items associated with the distribution of methamphet-

amine (i.e., cutting agents, strainers, small plastic baggies, and scales).

1. Defendants first contend that the court erred in denying their motion to suppress evidence.

Their argument is that the protective sweep of the house constituted an illegal warrantless search and that all evidence subsequently found is "fruit of the poisonous tree." This argument is without merit.

On the basis of Gail Inglett's comments and the officers' observation of at least one other individual in the residence, it appeared that there was more than one person on the premises engaged in narcotics trafficking. On the basis of his experience, Grizzard testified that where there is a large amount of narcotics "there's bound to be guns," and numerous guns in fact were found in Roger Inglett's bedroom.

Police officers are authorized to make a protective sweep in conjunction with an in-home arrest when they possess "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie,* 494 U. S. 325, 334 (110 SC 1093, 108 LE2d 276) (1990). It would thus appear that the officers in this case had the grounds needed to justify a protective sweep. And even if they did not, exigent circumstances did permit a cursory search of the house in order to prevent the escape of unknown individuals. See *United States v. Rubin,* 474 F2d 262, 268-269 (3), (4) (3rd Cir. 1973).

2. Defendants contend that the court erred in ruling at the *Jackson-Denno* hearing that oral statements by Gail Inglett to Officers Grizzard and Hamrick were admissible in evidence.

Defendants base this contention on testimony by Inglett denying that she was informed of her *Miranda* rights prior to making these statements. But Grizzard testified otherwise. This presented a conflict in the evidence which the trial court was authorized to resolve in the State's favor. See *Mack v. State,* 209 Ga. App. 104, 106 (1) (432 SE2d 680) (1993). The evidence supports the court's determination that Inglett made the statements at issue freely and voluntarily after a knowing and intelligent waiver of her *Miranda* rights.

3. Defendants next complain of the trial court's admission of crime lab evidence which tested negative for contraband.

Defendants have not, however, preserved this enumeration for appellate review. Although they have cited to parts of the record in which the trial court overruled their objection to the apparent admission of this evidence, they have failed to cite to that part of the record wherein the evidence itself was introduced. See Court of Appeals Rule 27 (c) (3).

4. Defendants charge the trial court with error in overruling

their hearsay objection to Grizzard's testimony concerning Jody Evans. Other grounds for objection which were not raised below have been waived. *Hawkins v. State*, 230 Ga. App. 627, 629 (2) (497 SE2d 386) (1998).

The State's evidence showed that as the officers were executing the search warrant in this case, the telephone rang. Grizzard testified on direct examination that Jody Evans was identified as the caller through the phone's caller identification feature. When Grizzard then began to explain how he knew Evans by alluding to his criminal record, defense counsel objected as follows: "We're getting far afield here as to something else. We're almost getting into irrelevant hearsay as to what we're talking about. We don't know for a fact other than the phone caller ID that in fact it was him calling." After an unreported bench conference, the court effectively overruled defendants' objection while agreeing to make it a continuing one. Grizzard proceeded to testify that Evans had recently pled guilty to possession of amphetamine with intent to distribute.

There is no merit in defendants' argument that Grizzard's testimony concerning the identification of Evans as the telephone caller constituted inadmissible hearsay. These computer-generated data automatically appearing on the screen of the telephone do "not constitute out-of-court statements by any person or 'the conclusion of a third party not before the court.' " *Caldwell v. State*, 230 Ga. App. 46, 47 (495 SE2d 308) (1997).

On the other hand, Grizzard's oral testimony concerning Evans' prior criminal conviction was subject to a hearsay objection. See *Lipscomb v. State*, 194 Ga. App. 657, 658 (2) (391 SE2d 773) (1990). But after this testimony was admitted, defendants elicited testimony during their cross-examination of Grizzard showing that Evans had been involved with Weathers in drug dealing and that Weathers had been convicted in federal court based on charges that he had engaged in drug trafficking schemes similar to the one in this case. Gail Inglett also testified on direct examination that Weathers had been involved in the distribution of methamphetamine. The foregoing testimony renders it highly probable that the error in admitting Grizzard's testimony concerning Evans' conviction did not contribute to the verdict. See generally *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

5. Defendants contend that the court erred in not granting their motion for a mistrial when the State sought to admit a photograph taken of Roger Inglett at the time of his arrest.

In the presence of the jury, the State tendered the photograph in evidence through the testimony of Grizzard in order to show a change in Inglett's appearance. When the defense raised an objection, the prosecuting attorney withdrew the tender, and the court

instructed the jury to disregard any comments concerning the photograph. We cannot say that the prosecuting attorney's comments were so harmful that the court abused its discretion in determining that remedial instructions were sufficient to cure any prejudice to the defense and that a mistrial was not warranted. See, e.g., *Crawford v. State*, 256 Ga. 585, 587 (2) (351 SE2d 199) (1987).

6. Defendants challenge the sufficiency of the evidence to support the verdicts against them. On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict; an appellate court determines evidence sufficiency and does not weigh the evidence; and the verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Kovacs v. State*, 227 Ga. App. 870 (1) (490 SE2d 539) (1997); see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6.

Gail Inglett accepted delivery of the package of methamphetamine and admitted that she had been provided with methamphetamine in exchange for doing so. Her boyfriend William Gill arrived at the residence while the search warrant was being executed. They both resided in the master bedroom, where rolling papers and suspected marijuana were found in plain view. In the adjacent room, police recovered bags containing more than one ounce of marijuana, methamphetamine, and a digital scale belonging to Gill, among other things. The jury was authorized to find that a virtual shop for methamphetamine preparation, packaging, and distribution was being operated in that room, which was accessible to all residents. Inglett admitted to police that all of the drugs found in the master bedroom belonged to her, and after the search warrant was obtained, she showed the officer bags of marijuana found in the adjacent room. In addition, she attempted to ingest a bag of methamphetamine as she was being escorted by the officers out of the house. In his defense, Gill gave testimony to the effect that he did not actually reside at the house, but he used the house as his address and his clothing was found in the master bedroom.

Roger Inglett resided in the other bedroom in the house. Less than one ounce of marijuana, methamphetamine, and straws used to snort methamphetamine were found in his bedroom, along with small plastic baggies and scales which can be used to weigh methamphetamine before distribution. At trial, he admitted that the marijuana was his. Evidence was also introduced showing that after his arrest, Inglett placed a telephone call to Jody Evans, informed him that the package had arrived, and told him that he needed to be

bailed out of jail.

Viewed in a light most favorable to the verdict, the evidence was sufficient to authorize any rational trier of fact to find beyond a reasonable doubt that all three defendants were in possession of methamphetamine with intent to distribute it, that Gail and Roger Inglett were both involved in the offense of trafficking in methamphetamine, that Gail Inglett and William Gill were in possession of more than one ounce of marijuana, and that Roger Inglett was in possession of less than one ounce of marijuana. To the extent that various of these convictions were solely based on circumstantial evidence, such evidence authorized the jury to find that every reasonable hypothesis except that of guilt was excluded.

7. Defendants next contend that the court erred in replaying a videotape of the crime scene to the jurors after they had begun their deliberations. They argue that the repeat showing unduly emphasized this evidence and violated the continuing witness rule.

Neither of these arguments has merit. The continuing witness rule is inapplicable here, as it precludes the court from allowing written testimony to go out with the jury to be read again during deliberations. *Hinton v. State*, 233 Ga. App. 213 (1) (504 SE2d 49) (1998). On the other hand, "[o]ur appellate courts have recognized the general rule that the trial court has discretion to 'hear again' evidence previously presented. [Cits.]" *Haynes v. State*, 180 Ga. App. 202 (2) (349 SE2d 208) (1986). Defendants have shown no abuse of discretion.

8. Defendants claim that they received ineffective assistance of counsel because they were represented by the same lawyer and their cases were not severed. Since the latter ground was not raised at the trial level, it will not be addressed here. *Hawkins v. State*, supra.

In their motion for new trial, Roger Inglett and William Gill claimed that they would have entered guilty pleas but were unable to do so because all three defendants were represented by the same attorney. At the hearing on the motion for new trial, the trial court was presented with conflicting testimony which it was required to resolve. *Mobley v. State*, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995). Testimony given by trial counsel showed that the State offered a guilty plea agreement conditioned on acceptance by all defendants. Defendants testified that they wanted their own attorneys but were told by defense counsel that joint representation was required since they were arrested together. Roger Inglett and Gill claimed that if they had secured independent counsel, they would have pled guilty.

But at the beginning of their trial, all defendants were asked in open court whether they perceived any kind of conflict in defense counsel's representation of them, and they all responded that they had no objection to their joint representation by counsel. Defense counsel testified at the hearing on the motion for new trial that he

informed defendants of the State's plea offer and made clear to them that they could opt to be represented by separate counsel.

Where, as here, the defendants do not object to multiple representation by the same attorney until after trial, they must show that an actual conflict of interest existed which impaired their attorney's performance on their behalf. *Tarwater v. State*, 259 Ga. 516, 518 (383 SE2d 883) (1989). Here, the trial court was authorized to find that no conflict existed because none of the defendants expressed any desire to plead guilty until after the State obtained the convictions, compare *Ford v. Ford*, 749 F2d 681 (11th Cir. 1985), and that defendants made a knowing and intelligent decision to be represented by the same lawyer. The trial court did not abuse its discretion in denying defendants' motion for new trial. *Young v. State*, 269 Ga. 490, 493 (2) (500 SE2d 583) (1998).

9. Defendants maintain that their sentences violated the Eighth Amendment.

The sentences of imprisonment are well within statutory limits. See OCGA §§ 16-13-30; 16-13-31. "A determinate sentence which falls within statutorily mandated parameters is not subject to attack on Eighth Amendment grounds. [Cit.]" *Pollard v. State*, 230 Ga. App. 159, 161 (5) (495 SE2d 629) (1998); compare *Haygood v. State*, 225 Ga. App. 81, 83 (2) (483 SE2d 302) (1997) (where trial court was considering a sentence of fine and community service but imposed the maximum sentence of imprisonment after defendant made known her decision to appeal). The fines for trafficking in methamphetamine were also within the statutory limit, OCGA § 16-13-31 (e) (1), and were not " 'grossly out of proportion to the severity of the crime.' " Id. at 83 (2).

10. "Because we have decided the main appeal, the appeal from the denial of bond pending post-trial relief is moot. [Cit.]" *Fenimore v. State*, 218 Ga. App. 735, 739 (463 SE2d 55) (1995).

*Judgment affirmed in Case No. A99A0910. Appeal dismissed as moot in Case No. A99A0911. Andrews, P. J., and Ruffin, J., concur.*

DECIDED JULY 28, 1999 —
RECONSIDERATION DENIED AUGUST 6, 1999

*John D. Rasnick*, for appellants.
*Peter J. Skandalakis, District Attorney, Lynda S. Engel, Assistant District Attorney*, for appellee.