A04A1882. NELSON v. THE STATE.
(610 SE2d 627)

MIKELL, Judge.

We granted Floyd S. Nelson's application for interlocutory appeal of the trial court's order denying his motion to suppress marijuana seized at his residence during a consent search. Nelson contends that the trial court erred in ruling that a "protective sweep" was justified under the totality of the circumstances. He further argues that the illegality of the sweep tainted the consent to search obtained from another occupant of the residence. Because the contraband was not discovered during the "protective sweep," and the evidence otherwise supports the trial court's ruling, we affirm.

> When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.[1]

Viewed in its proper light, the evidence adduced at the hearing on the motion to suppress shows that U. S. Postal Service inspectors became suspicious of a duct-taped package addressed for delivery to 224 Adams Lake Drive ("Adams Lake"), Lawrenceville. They contacted the Gwinnett County Drug Task Force. The lead investigator, Jon Doherty, testified that the package was placed in a lineup with

---

[1] (Citation omitted.) *Powell v. State*, 245 Ga. App. 796, 798-799 (538 SE2d 857) (2000).

dummy packages and a drug-detecting K-9 dog was brought in. The dog alerted on the package, and the postal inspectors obtained a search warrant. Eight to ten pounds of marijuana were discovered in the package. A controlled delivery was arranged, and the package was rigged so that when it was opened, a signal would be activated in a surveillance van. A search warrant was obtained for 224 Adams Lake.

A postal service inspector dressed as a delivery person delivered the package to 224 Adams Lake. An unidentified male exited the residence and signed for the package, which he placed in a green minivan in the driveway. Thereafter, Doherty, who was sitting in the "takedown" van, observed a vehicle arrive at the house next door, 194 Adams Lake, and then back into the garage. A man later identified as Nelson exited the vehicle and walked across the lawn to 224 Adams Lake. The man who signed for the package retrieved it from the minivan and gave it to Nelson, who took the package back to 194 Adams Lake and entered the garage. Approximately ten minutes later, the signal was received, indicating that the package had been opened. Then postal inspectors "took down" the 224 Adams Lake residence.

At the same time Doherty and a team of officers approached 194 Adams Lake; they yelled "Police! Police!" and commanded the residents to come to the door. Doherty saw curtains moving at the front of the house, but no one came to the door. Meanwhile, Task Force Investigator J. L. McDonald, who was conducting surveillance at the rear of the house, testified that he heard a commotion inside and then saw several occupants of the residence attempting to flee from the basement door. These occupants included Nelson and Carlos Eugene Brisco, who rented the 194 Adams Lake residence from Nelson. The police secured all of the individuals outside. Thereafter, for purposes of officer safety, they conducted a protective sweep inside the residence to check for additional people and/or weapons. Doherty explained that "with drugs, or . . . when we're taking somebody down, safety is our number [one] concern. We don't want anybody to get shot, or . . . somebody else . . . may be a victim inside . . . being held hostage."

During the sweep, the police noticed the box in which the package had been delivered inside the garage. They did not look inside the box but left it there and went outside to explain to the detained subjects what was happening. After the police learned that Brisco resided in the house with his family, the officers asked him for consent to search the premises. Doherty testified that Brisco verbally consented to the search and signed an authorization to search form as well. After obtaining consent, the officers searched the garage. The box that they had observed during the safety sweep was empty. Doherty testified

that they eventually found the marijuana stuffed between two mattresses in the garage. Brisco gave an on-the-scene videotaped statement, which was admitted into evidence without objection. Nelson was arrested; Brisco was not.

At the end of the hearing, the court ruled that the officers were fully justified in conducting the protective sweep because they "had no idea whether there were other individuals in the home, whether there were weapons in the home, and certainly they were authorized to go in and ensure that the home was secure and that they were going to be safe." As for Brisco's consent, the court commented that Brisco appeared relaxed on the videotape and showed no evidence of fear or coercion.

In its order denying the motion to suppress, the court found the following facts: As police approached 194 Adams Lake, "they knew a significant amount of contraband was inside, they observed movement consistent with the occupants being aware of their presence, they heard a 'commotion' within, and they observed some occupants begin ... to run out the back door of the house." Accordingly, the court ruled that the protective sweep was justified under the totality of the circumstances. The court further found that the contraband was neither observed nor seized during the sweep, so that the legality of the seizure depended on validity of the consent given to search the residence. The court found that the circumstances under which consent was obtained were not coercive and that consent was freely and voluntarily given. The court's order reflects that its finding was based in part on Brisco's demeanor during the videotaped interview. The videotape has not been included in the record on appeal.

1. A "protective sweep" is a limited search of the premises conducted primarily to ensure the safety of police officers by detecting the presence of other occupants.[2] The seminal United States Supreme Court case authorizing this type of warrantless entry, *Maryland v. Buie*,[3] held that officers are authorized to perform a protective sweep in conjunction with an in-home arrest when they possess "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."[4]

In the case at bar, Nelson advances three arguments in support of his claim that the protective sweep was illegal: that it was not conducted incident to an arrest; that it was not justified by exigent

---

[2] *State v. Mixon*, 251 Ga. App. 168 (554 SE2d 196) (2001).

[3] 494 U. S. 325 (110 SC 1093, 108 LE2d 276) (1990).

[4] Id. at 334 (III).

circumstances; and that the police possessed no articulable facts that the residence harbored a dangerous individual. These arguments are flawed and miss the mark.

(a) Nelson argues that pursuant to *Buie*, a protective sweep is authorized only when it is conducted incident to a lawful arrest. This same argument was made by the defendant in *United States v. Taylor*.[5] In rejecting the contention that protective sweeps must be limited to arrest situations, the Sixth Circuit Court of Appeals held that a police officer left behind to secure a residence while a search warrant was obtained was justified in conducting a protective sweep: "We think that it follows logically that the principle enunciated in *Buie* with regard to officers making an arrest — that the police may conduct a limited protective sweep to ensure the safety of those officers — applies with equal force to an officer left behind to secure the premises while a warrant to search those premises is obtained."[6] The same logic applies in the instant case; the officers were entitled to conduct a limited sweep to ensure their safety prior to obtaining consent to search from Brisco. The fact that the sweep was not performed incident to an arrest does not render it invalid under the Fourth Amendment.

(b) Nelson's argument that the sweep was not justified by exigent circumstances is without merit. The trial court specifically found that the officers knew contraband and people were inside the house and that they observed occupants of the house running out the back door. We have previously held that exigent circumstances permit a cursory search of a house in order to prevent the escape of unknown individuals.[7] The same result follows in this case. The protective sweep was justified by exigent circumstances.[8]

(c) Finally, we reject Nelson's argument that the sweep was invalid because the police failed to articulate facts warranting a reasonable belief that the residence harbored a dangerous individual. "Although we review police actions from the standpoint of a hypothetical 'reasonable' officer, we must measure those actions from the foresight of an officer acting in a quickly developing situation and not from the hindsight of which judges have benefit."[9] The police testified

---

[5] 248 F3d 506 (6th Cir. 2001).

[6] Id. at 513 (II) (A). See also *United States v. Patrick*, 959 F2d 991, 996-997 (D.C. Cir. 1992) (police may conduct protective sweep of bedroom after lessee has given consent to search other parts of apartment); *United States v. Daoust*, 916 F2d 757, 759 (1st Cir. 1990) (*Buie* standard applies to a protective sweep made in conjunction with a search warrant).

[7] *Inglett v. State*, 239 Ga. App. 524, 525 (1) (521 SE2d 241) (1999).

[8] Compare *Welchel v. State*, 255 Ga. App. 556, 559 (565 SE2d 870) (2002) (no exigent circumstances justified warrantless entry into motel room); *Bolton v. State*, 258 Ga. App. 217, 219 (573 SE2d 479) (2002) (officer testified that he perceived no exigent circumstances).

[9] (Citations omitted.) *State v. Brannan*, 222 Ga. App. 372, 373 (1) (474 SE2d 267) (1996).

that "with drugs . . . safety is our number one concern. We don't want anybody to get shot." The officers also testified that they were confronted with fleeing suspects, which motivated their decision to perform the sweep. In the context of that quickly developing situation, they articulated facts sufficient to justify a cursory sweep.[10]

Moreover, contrary to Nelson's argument, this case is distinguishable from *State v. Mixon*.[11] In *Mixon*, we affirmed the grant of a motion to suppress evidence discovered during a warrantless protective sweep based on evidence supporting the trial court's finding that police officers did not possess a reasonable belief that the swept home harbored an individual posing a danger to them.[12] In the case at bar, the contraband sought to be suppressed was not even observed, much less seized, during the protective sweep, and the evidence demonstrates, in accordance with the trial court's finding, that the sweep was justified.

2. Nelson's sole challenge to the consent search is that Brisco's consent was tainted by the "illegal" protective sweep.[13] As we have determined that the sweep was valid, this enumeration fails.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 16, 2005.

*Douglas N. Fox*, for appellant.
*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.

---

[10] See *Inglett*, supra (protective sweep justified by testimony that, based on officer experience, "where there is a large amount of narcotics 'there's bound to be guns' ").

[11] Supra.

[12] Id. at 170. Accord *State v. Charles*, 264 Ga. App. 874, 875-876 (1) (592 SE2d 518) (2003) (defendant answered and cooperated when police knocked on door; finding that sweep was unjustified affirmed).

[13] See *Welchel*, supra at 560 (consent to search obtained after an illegal entry is tainted and invalid under the Fourth Amendment); *Bolton*, supra at 218 (consent to search obtained pursuant to an illegal entry was "fruit of the poisonous tree"). Compare *Fincher v. State*, 276 Ga. 480, 481 (2) (578 SE2d 102) (2003) (consent to search cured any defect in the prior warrantless entry); *Smith v. State*, 262 Ga. App. 614, 621 (4) (585 SE2d 888) (2003) (valid consent to search ratified initial warrantless entry).