A10A1799. PARK v. THE STATE.
(708 SE2d 614)

MILLER, Presiding Judge.

A jury convicted Daniel Park of trafficking in marijuana (OCGA § 16-13-31 (c)) and misdemeanor possession of marijuana (OCGA § 16-13-30 (j) (1)). Park appeals, contending that (i) the trial court erred in denying his motion to suppress the evidence seized during the warrantless search of his residence and (ii) the evidence was insufficient to sustain his trafficking in marijuana conviction. Discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the trial evidence shows that on April 4, 2008, a suspicious package addressed to Park's residence in Hall County was misdirected to Park's neighbor. The package was a medium-sized box bearing the name "Abby." After retrieving the package, the neighbor noticed that the package was "a little soggy" and "had a funny smell to it." The neighbor described that the package eventually "started smelling really bad" and caused her to develop a slight headache. Perceiving that something "just didn't seem right" about the package, the

neighbor took it to her father for his inspection. When her father opened the package, they observed a grass-like substance wrapped in plastic. They suspected that the substance was marijuana and called the police.

The responding officers took custody of the package and launched an investigation. The investigating detective identified the substance in the package as marijuana based upon his training and experience. Subsequent testing of the substance further confirmed that it was marijuana, weighing 12.46 pounds.

On the same afternoon that the package was received, the officers arranged a controlled delivery to the address that was listed on the package. An investigator, disguised as a postal carrier, made the delivery, while other undercover officers provided backup and surveillance nearby. When the investigator knocked on the door to the residence, Park's roommate and co-defendant, Justin Wilson, answered. The investigator asked Wilson if "Abby" was present. Wilson responded, "no . . . but they were expecting the package and he would accept delivery of it." Wilson signed the delivery form, using a fictitious name, and took possession of the package containing the drug contraband. When Wilson attempted to take the package inside the residence, the investigator gave the takedown signal to the other agents and secured the package from Wilson's possession. Wilson was placed on the ground and was detained in handcuffs.

Through the open door of the residence, the officers observed the presence of four adult occupants. The officers entered the residence, performed a protective sweep, and secured all of the occupants. During the protective sweep, the officers observed a marijuana grinder, marijuana stems, and plastic baggies in plain view on a table in the bedroom identified as belonging to Park.

Following the protective sweep, the officers requested and received Wilson's consent to search the common areas of the residence. During the search, the officers discovered marijuana in a baggie located in a bathroom and additional baggies containing marijuana residue in the kitchen.

After Wilson was arrested, he was advised of his rights under *Miranda*.[1] Wilson agreed to cooperate with the investigation and informed the officers that his roommate, Park, had advised him that the package of marijuana would be shipped to the residence and that the package was for his friend, David Salinas. Although Park was not present at the residence during the controlled delivery, Wilson informed the officers that Park would be arriving soon.

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

Park arrived at the residence shortly thereafter. The officers arrested Park and advised him of his rights under *Miranda*.[2] The officers requested and received Park's consent to search his person and his bedroom. During the search of Park's person, the officers discovered and seized a marijuana pipe containing a trace amount of marijuana. During the search of Park's bedroom, the officers seized digital scales, along with the marijuana grinder, marijuana stems, and plastic baggies that previously had been observed in plain view.

Park agreed to cooperate with the investigation and answered the officers' questions regarding the drug package. In his statements, Park admitted that he was a drug abuser who smoked marijuana. Park informed the officers that his friend, David Salinas, had devised a plan to send the drug package to his residence, and that he had agreed to accept delivery of the drug package in exchange for $200 and an ounce of marijuana for his personal consumption.

Park further assisted in the investigation by contacting Salinas on his telephone while the officers listened and recorded the conversation. During the conversation, Park advised Salinas that the drug package had been delivered to the residence, and Salinas stated that he would come to the residence to retrieve it. When Salinas arrived at the residence, he was arrested.

Park, Wilson, and Salinas were jointly charged with multiple drug offenses as parties to the crimes. Before trial, Park filed a motion to suppress the evidence, contending that the officers' entry and search of the residence without a warrant was unauthorized and that his subsequent questioning and warrantless arrest flowing therefrom were illegal. After a hearing, the trial court denied the motion, finding that the warrantless entry and search were authorized based upon Park's and Wilson's consent and, alternatively, based upon exigent circumstances.

The statements provided by Wilson and Park to the officers during the investigation had been recorded by audiotape and were played for the jury at trial. Park testified in his defense, admitting his involvement in the plan to accept delivery of the drug package at his residence and further admitting that the drug contraband seized from his person and his bedroom belonged to him. At the conclusion of the trial, the jury found Park guilty of the drug trafficking and misdemeanor drug possession offenses.

1. Park contends that the trial court erred in denying his motion to suppress the drug evidence seized after the warrantless entry and search of his residence. We disagree.

---

[2] Id.

In ruling on a motion to suppress, the trial court sits as the trier of fact, and the court's findings are analogous to a jury verdict and will not be disturbed when the record contains any evidence to support those findings. When reviewing a trial court's ruling on a motion to suppress, the evidence must be construed most favorably toward the court's findings unless those findings are clearly erroneous. Further, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial.

(Citations and punctuation omitted.) *Herring v. State*, 279 Ga. App. 162 (630 SE2d 776) (2006).

The trial court found that Park and Wilson had freely and voluntarily consented to the search of their residence, and thus, the warrantless search was authorized. The record evidence supports the trial court's finding.

Even assuming the illegality of the initial entry and search,[3] a party's subsequent consent to the search, which is freely and voluntarily given, may serve as an independent act of free will that purges the primary taint and authorizes admission of the evidence. See *Spence v. State*, 281 Ga. 697, 700-701 (3) (642 SE2d 856) (2007); *State v. Brown*, 269 Ga. App. 875, 877 (605 SE2d 628) (2004). See also *Brown v. Illinois*, 422 U. S. 590, 599 (II) (95 SC 2254, 45 LE2d 416) (1975) (in determining whether evidence is "fruit of the poisonous tree," "the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which [the] instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint") (citations and punctuation omitted). Several factors for courts to consider in addressing this issue include "the time elapsed between the illegality and the acquisition of the evidence; the presence of intervening circumstances; and the purpose and flagrancy of the official misconduct." (Punctuation and footnote omitted.) *Spence*, supra, 281 Ga. at 700 (3), citing *Brown*, supra, 422 U. S. at 603-604 (III). See also *Brown*, supra, 269 Ga. App. at 877.

"A warrantless search of a residence may be authorized by the consent of any person who possesses a sufficient relationship to the premises to be inspected." (Citation and punctuation omitted.) *Pike*

---

[3] The trial court also held that the warrantless entry and search of the residence was authorized by exigent circumstances. Pretermitting whether exigent circumstances existed, however, the warrantless search was valid based upon the consents to the search, as fully explained herein.

*v. State*, 265 Ga. App. 575, 577 (1) (594 SE2d 753) (2004). Here, the evidence established that Park's roommate, Wilson, gave the officers consent to search the common areas of the residence. After Park arrived at the residence, he likewise consented to the searches of his bedroom and of his person.[4]

Park nevertheless contends that the consents were not freely and voluntarily given. Park suggests that the consents were given under coercion and duress since several officers were present and they had been held at gunpoint, handcuffed, and placed on the ground during their detentions.

"When the state relies on a consent search, it bears the burden of showing that the consent was voluntarily given, and not the result of duress or coercion, either express or implied. Voluntariness is a question of fact to be determined by the trial court from all of the circumstances." (Punctuation and footnote omitted.) *Silverio v. State*, 306 Ga. App. 438, 446 (3) (702 SE2d 717) (2010). See also *Code v. State*, 234 Ga. 90, 93 (III) (214 SE2d 873) (1975).

Here, the officers testified that they did not coerce, threaten, or offer any hope of benefit to obtain the consents. Although the evidence reflects that the officers previously had their guns drawn when they approached Wilson for the takedown and approached Park prior to his arrest, the officers testified that their guns had been placed back in their holsters by the time that the consents were requested and obtained. See *Smith v. State*, 165 Ga. App. 333, 335 (2) (299 SE2d 891) (1983) (concluding that the defendant had freely and voluntarily consented to the search of his vehicle since the officers were no longer pointing weapons at him when the consent was requested). Even if Wilson and Park were being detained in handcuffs when they consented to the search, "voluntary consent may be given while a suspect is handcuffed." (Footnote omitted.) *Silverio*, supra, 306 Ga. App. at 446 (3). And although approximately six to eight officers were present at the scene, such did not require a finding of coercion. See id. ("The presence of several police officers does not require a finding of coercion, although it merits close judicial scrutiny.") (footnote omitted). See also *Code*, supra, 234 Ga. at 94 (III) (concluding that the presence of approximately 11 police officers surrounding the house does not ipso facto require a finding of coercion). There was no evidence that the officers were acting in a threatening manner.

Significantly, at the motion hearing and at trial, the State played an audio recording of the conversations that Wilson and Park had

---

[4] After the controlled delivery, an officer began the process for obtaining a search warrant, but he ceased his efforts after Wilson and Park consented to the search.

with the officers. The audio recording has also been submitted for our appellate review. In the audio recording, the officers spoke to Wilson and Park in normal tones and did not use threats or coercion. Wilson and Park can be heard giving their express consents to the searches and cooperating with the officers by providing information. Based upon the evidence presented, the trial court was authorized to find that Wilson and Park had freely and voluntarily consented to the search under permissible circumstances, without duress or coercion. See *Silverio*, supra, 306 Ga. App. at 446 (3).

The trial court was also authorized to find that there was no evidence of flagrant misconduct in this case. See *Spence*, supra, 281 Ga. at 701-702 (3). The warrantless entry and search followed the valid execution of a controlled delivery of the drug package to the residence.[5] See *Nelson v. State*, 271 Ga. App. 658, 661-662 (1) (c) (610 SE2d 627) (2005); *Inglett v. State*, 239 Ga. App. 524 (521 SE2d 241) (1999). See also *United States v. McGregor*, 31 F3d 1067 (11th Cir. 1994). Moreover, when Wilson accepted the package and was detained, the door to the residence was open and the officers observed four additional adult occupants. The officers explained that they were concerned about officer safety since they were unsure of whether the occupants were armed and dangerous. Under these circumstances, the trial court was authorized to find that the officers did not engage in flagrant misconduct, but rather, perceived that entry and a protective sweep of the residence was necessary to secure the occupants and to ensure officer safety. *Nelson*, supra, 271 Ga. App. at 660-662 (1) (a)-(c); *Inglett*, supra, 239 Ga. App. at 525 (1).

In analyzing the attenuation factors set forth in *Brown*, supra, even assuming that there was no lapse of time between the assumed illegal conduct and the consents, the trial court was presented with evidence reflecting that Wilson's and Park's consents to the search were acts of free will that were sufficiently attenuated from any assumed illegality of the search. See *Spence*, supra, 281 Ga. at 701-702 (3). Accordingly, the evidence discovered during the search was admissible and the trial court's denial of the motion to suppress was proper. Id.

2. Park also challenges the sufficiency of his trafficking in marijuana conviction. He argues that his conviction must be vacated since there was no evidence that he possessed the package of marijuana or had the intention to exercise authority and control over it. Again, we disagree.

---

[5] The evidence establishes that since the package had previously been misdirected to Park's neighbor and was not properly addressed, the officers lacked sufficient information to identify with certainty the proper location and individuals linked to the package. Accordingly, the officers executed the controlled delivery as part of their investigation.

Park, along with his co-defendants Wilson and Salinas, was charged as a party to the trafficking in marijuana crime.

> OCGA § 16-2-20 pertinently provides: (a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of the commission of the crime. (b) A person is concerned in the commission of a crime . . . if he (3) [i]ntentionally aids or abets in the commission of the crime.

(Punctuation and emphasis omitted.) *Williams v. State*, 199 Ga. App. 566, 567-568 (1) (405 SE2d 716) (1991). Here, the trial evidence, including Park's own admissions, established that Park, Wilson, and Salinas were willing participants in the drug offenses and that Park had agreed to accept delivery of the package of marijuana at his residence in exchange for $200 and an ounce of marijuana for his personal consumption. Park also admitted that he was aiding Salinas's efforts to commit the trafficking offense by giving Salinas a safe haven and a means to avoid law enforcement detection. The trial evidence further established that the marijuana contained in the package weighed 12.46 pounds, a quantity exceeding that defined for the drug trafficking offense. See OCGA § 16-13-31 (c) ("Any person who knowingly . . . has possession of a quantity of marijuana exceeding 10 pounds commits the offense of trafficking in marijuana[.]"). Regardless of "[w]hether he had physical possession of the cocaine, [Park] aided and abetted its actual physical possession and is guilty of the offense of trafficking under OCGA § 16-13-31 [(c)] and under [OCGA] § 16-2-20, as a party to the crime[.]" (Citation and punctuation omitted.) *Dukes v. State*, 186 Ga. App. 815 (369 SE2d 259) (1988). Park's conviction, therefore, was authorized. See *Williams*, supra, 199 Ga. App. at 567-568 (1); *Dukes*, supra, 186 Ga. App. at 815.

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED MARCH 23, 2011.

*Jon D. Haskin*, for appellant.
*Lee Darragh, District Attorney, Shiv Sachdeva, Assistant District Attorney*, for appellee.