A11A2344. SALINAS v. THE STATE.

(722 SE2d 432)

MILLER, Judge.

Following a jury trial, Jose David Salinas was convicted of trafficking in marijuana (OCGA § 16-13-31 (c)), possession of marijuana with intent to distribute (OCGA § 16-13-30 (j) (1)), and possession of marijuana (OCGA § 16-13-30 (a)). Salinas filed a motion for new trial, which the trial court denied. On appeal, Salinas contends that the trial court erred in allowing the law enforcement officers to testify as experts in the identification of marijuana. He further argues that the evidence was insufficient to support his trafficking in marijuana and possession of marijuana with intent to distribute convictions. We discern no error and affirm.

The record shows that Salinas was jointly indicted with his co-defendants, Daniel Park and Justin Wilson, for the drug offenses.

Each of the co-defendants was convicted during separate jury trials. In *Park v. State*, 308 Ga. App. 648 (708 SE2d 614) (2011), we affirmed Park's conviction. In *Wilson v. State*, 312 Ga. App. 166 (718 SE2d 31) (2011), we affirmed Wilson's conviction. The evidence adduced during Salinas's trial was essentially the same as that presented at the trial of his co-defendants. Viewed in the light most favorable to the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the trial evidence showed as follows:

> [O]n April 4, 2008, a suspicious package addressed to [the] residence [of Parks and Wilson] in Hall County was misdirected to [their] neighbor. The package was a medium-sized box bearing the name "Abby." After retrieving the package, the neighbor noticed that the package ["smelled funny and was kind of soggy"]. . . . [T]he neighbor took [the package] to her father for his inspection. When her father opened the package, they observed a . . . substance wrapped in plastic. They suspected that the substance was marijuana and called the police.
>
> The responding officers took custody of the package and launched an investigation. The investigating detective identified the substance in the package as marijuana based upon his training and experience. Subsequent testing of the substance further confirmed that it was marijuana, weighing 12.46 pounds.
>
> On the same afternoon that the package was received, the officers arranged a controlled delivery to the address that was listed on the package. An investigator, disguised as a postal carrier, made the delivery, while other undercover officers provided backup and surveillance nearby. When the investigator knocked on the door to the residence, . . . Wilson answered. The investigator asked Wilson if "Abby" was present. Wilson responded, "no . . . but they were expecting the package and he would accept delivery of it." Wilson signed the delivery form, using a fictitious name, and took possession of the package containing the drug contraband. When Wilson attempted to take the package inside the residence, the investigator gave the takedown signal to the other agents and secured the package from Wilson's possession. Wilson was placed on the ground and was detained in handcuffs.
>
>  . . .
>
> Wilson was arrested[.]
>
>  . . .
>
> Park arrived at the residence shortly thereafter. The officers arrested Park and . . . received Park's consent to

search ... his bedroom. ... During the search of Park's bedroom, the officers seized digital scales, along with the marijuana grinder, marijuana stems, and plastic baggies[.]

Park ... assisted in the investigation by contacting Salinas on his telephone while the officers listened and recorded the conversation. During the conversation, Park advised Salinas that the drug package had been delivered to the residence, and Salinas stated that he would come to the residence to retrieve it. When Salinas arrived at the residence, he was arrested.

(Punctuation omitted.) *Park*, supra, 308 Ga. App. at 648-650.

Following Salinas's arrest, he was advised of his rights under *Miranda*.[1] Salinas gave a statement, admitting that the marijuana belonged to him.

1. Salinas contends that his drug convictions should be reversed since the trial court erred in allowing the law enforcement officers to testify as experts in the identification of marijuana. We discern no error.

It is well established that expert testimony is not necessary to identify a substance, including drugs. And even if police officers are not formally tendered as expert witnesses, if an adequate foundation is laid with respect to their experience and training, their testimony regarding narcotics is properly admitted. ... An expert is one whose habits and profession endow him or her with a particular skill in forming an opinion on the subject matter in inquiry. This Court has recognized such a combination of training and experience as sufficient to qualify one as an expert witness.

(Citations and punctuation omitted.) *Atkinson v. State*, 243 Ga. App. 570, 572 (1) (531 SE2d 743) (2000).

In this case, the trial court admitted the opinion testimony of four investigating officers who positively identified the substance in the package as being marijuana based upon their visual and olfactory examinations of the substance. The trial testimony established that each officer had become familiar with the characteristics of marijuana and could identify it based upon his knowledge and experiences in law enforcement. The testimony established that each officer had prior experience in handling numerous drug cases and that each had extensive contact with marijuana on prior occasions.

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

The officers testified based upon their training and experience that the substance in the package smelled and looked like marijuana. In light of the testimony establishing the officers' training and experience, the trial court was within its discretion to find that a sufficient foundation had been laid to allow the officers to state their opinion that the substance in the package was marijuana. See *Thurmond v. State*, 304 Ga. App. 587, 589 (1) (a) (696 SE2d 516) (2010) (officer was qualified to identify the drug substance as cocaine in light of his training and experience in narcotics investigations); *Millwood v. State*, 166 Ga. App. 292, 293 (3) (304 SE2d 103) (1983) (trial court did not abuse its discretion in admitting officer's opinion testimony that the drug substance was marijuana since the officer had training and experience in evaluating marijuana).

Salinas nevertheless claims that the officers' testimony was inadmissible since there had been no showing pursuant to *Harper v. State*, 249 Ga. 519, 524-526 (1) (292 SE2d 389) (1982), that their visual and olfactory identification techniques had reached a scientific stage of verifiable certainty. At trial, however, Salinas failed to object to the officers' testimony on this ground. "[I]n order to preserve an objection upon a specific ground for appeal, the objection must be made at trial upon that specific ground." (Citations and punctuation omitted.) *Shafer v. State*, 285 Ga. App. 748, 750 (2) (647 SE2d 274) (2007). Since Salinas did not object on this specific ground, his claim has been waived. Id.

But even if Salinas's claim had been preserved, it was without merit. "The fatal flaw in [Salinas's] argument on this position is that although the [officers] were presented as experts, it was apparent that their testimony did not deal with scientific principles but with observation . . . of [a] physical object[ ], with matters not of science but of skill and experience." (Citation omitted.) *Belton v. State*, 270 Ga. 671, 674 (4) (512 SE2d 614) (1999). Since the officers' observations were not a matter of scientific principle or technique, the *Harper* standards did not apply. Id. Moreover, we have held that "[t]he expert opinions of the officers — based on visual observation, and sometimes feel or smell — plus that circumstantial evidence is enough, even absent conclusive scientific testing." *Jones v. State*, 268 Ga. App. 246, 249 (1) (601 SE2d 763) (2004).

More importantly, notwithstanding the officers' testimony, the substance in the package was identified as marijuana through the testimony of an investigator who tested the drug substance. The investigator testified that he was certified through the Georgia Bureau of Investigation ("GBI") to test marijuana. Drug testing was a part of the investigator's regular duties, and he had performed at least 60 tests in prior cases. The investigator was admitted, without objection, as an expert in marijuana testing and analysis. The

investigator described his testing procedures, which included examining a sample of the substance under a microscope and performing chemical testing procedures. The tests confirmed that the substance was marijuana.

Thus, to the extent that the officers' testimony was merely cumulative of the investigator's identification of the substance as marijuana based upon scientific drug testing procedures, Salinas's challenge to the admissibility of the officers' testimony fails to present a basis for reversal. "Evidence which is cumulative of other legally admissible evidence of the same fact, renders harmless admission of incompetent evidence." (Citation and punctuation omitted.) *Taylor v. State*, 263 Ga. App. 420, 423 (3) (587 SE2d 791) (2003).[2]

2. Salinas further contends that the evidence was insufficient to support his convictions for trafficking in marijuana and possession of marijuana with intent to distribute. Again, we disagree.

OCGA § 16-13-31 (c) provides that "[a]ny person who knowingly . . . has possession of a quantity of marijuana exceeding 10 pounds commits the offense of trafficking in marijuana[.]" OCGA § 16-13-30 (j) (1) states that "[i]t is unlawful for any person to . . . possess with intent to distribute marijuana." "The presence of the marijuana . . . , coupled with the quantity of marijuana and the presence of scales used to weigh drugs, [is] sufficient evidence of possession of marijuana with an intent to distribute." (Citation and punctuation omitted.) *Midura v. State*, 183 Ga. App. 523 (1) (359 SE2d 416) (1987).

The aforementioned trial evidence established that Salinas, along with his co-defendants Park and Wilson, participated in a plan for the delivery of the package of marijuana to the residence. In addition to the marijuana, the officers found and seized digital scales, a marijuana grinder, and plastic baggies. The trial evidence further reflected that Salinas gave the officers a statement admitting "that the marijuana was his." This evidence sufficiently established that Salinas was a party to the drug offenses. See OCGA § 16-2-20

---

[2] Salinas further argues that the trial court erred in failing to charge the jury on the difference between scientific experts and police officers who have experience with controlled substances. Salinas's enumerations of error, however, fail to set forth this claim of error. "It is well settled . . . that an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors." (Citation and punctuation omitted.) *Collier v. State*, 303 Ga. App. 31, 33 (2), n. 10 (692 SE2d 697) (2010). See also *Brown v. State*, 307 Ga. App. 99, 104 (2) (c) (704 SE2d 227) (2010). We therefore decline to address Salinas's argument. We nevertheless note that the trial court gave jury instructions explaining that the weight and credibility of the expert opinion testimony was to be determined by the jury. Salinas has not cited to any legal authority supporting his argument that an additional jury charge was required.

(defining when a person is a party to a crime); *Park*, supra, 308 Ga. App. at 654 (2). Regardless of whether he had physical possession of the marijuana, Salinas aided and abetted its actual physical possession; thus, the jury's guilty verdict was authorized. See *Park*, supra, 308 Ga. App. at 654 (2).

Salinas contends that his admission to the officers was ambiguous since it did not specifically reference the package. The investigating officers, however, testified that Salinas's admission, in context, pertained to the marijuana in the package since the recorded conversation between Salinas and Parks, the investigation, and the questioning centered around the package.

Salinas also argues that his trafficking conviction must be reversed since the State failed to prove that he had knowledge of the quantity of marijuana in the package. This issue has previously been decided adversely to Salinas by our precedent in *Wilson*, supra, 312 Ga. App. at 168 (2).

We likewise discern no merit in Salinas's contention that the evidence was insufficient to establish the weight of the marijuana. The investigator who weighed the marijuana stated that the drug substance weighed 12.46 pounds. Salinas nevertheless argues that the investigator's procedure of scientifically testing a sample of the substance was insufficient to establish that the entire package consisted of marijuana. Contrary to Salinas's argument, however, "[t]his Court has previously held that the testing of representative samples is sufficient to support a conviction for trafficking in the entire amount." (Citation and punctuation omitted.) *Maldonado v. State*, 284 Ga. App. 26, 32-33 (9) (643 SE2d 316) (2007). See also *Smith v. State*, 289 Ga. App. 236, 237-238 (656 SE2d 574) (2008). The jury was thus authorized to find Salinas guilty of the trafficking offense.

*Judgment affirmed. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED JANUARY 26, 2012.

*Mark A. Begnaud*, for appellant.
*Lee Darragh, District Attorney, Shiv Sachdeva, Assistant District Attorney*, for appellee.