## A95A2001. CLEVELAND v. THE STATE.
(463 SE2d 36)

BEASLEY, Chief Judge.

Cleveland appeals his convictions of trafficking in cocaine (OCGA § 16-13-31), obstructing a law enforcement officer (OCGA § 16-10-24), fleeing or attempting to elude a police officer (OCGA § 40-6-395), and driving while license suspended or revoked (OCGA § 40-5-121).

The evidence showed that a Georgia State Patrol officer made a traffic stop of an automobile driven by Cheeks. Cleveland was sitting in the front seat, and Strickland was sitting in the back seat. Cheeks informed the officer that Cleveland owned the car. Cheeks then consented to being patted down by the officer and to sitting in the back of his patrol car.

The officer then questioned Cleveland. As Cleveland was removing vehicular documentation from the glove compartment at the officer's request, the officer observed him reach down with his left hand

---

and push an object wrapped in aluminum foil under the passenger seat. Cleveland consented to the officer's patting him down, but as he began to do so, Cleveland hit him, got into his car, and fled.

The officer and other backup units pursued Cleveland to the parking lot of a gas station. As Cleveland exited his car, the officer observed him drop the foil-wrapped object and a white chalky-looking substance fall to the ground and break into pieces. Cleveland picked it up and ran into a wooded area, but he was arrested at a nearby restaurant. After his arrest, he made a statement to the police to the effect that he did not set up the deal. The aluminum foil and cocaine were found in the wooded area, and more cocaine was found in the parking lot of the gas station. The total weight was 58.8 grams with a purity of 47 percent.

Strickland testified that on the day in question Cheeks drove Cleveland's car from Gainesville (where all three lived) to a housing project in Atlanta, left for about 30 minutes while Strickland and Cleveland remained in the car, returned with the object wrapped in aluminum foil, and instructed Cleveland to put it underneath his seat. According to Strickland, Cleveland took Cheeks to Atlanta because Cheeks was going to pay him $50. Strickland did not think Cleveland had knowledge of the fact that he was going to transport drugs, but he acknowledged that he and Cleveland could observe drug activity at the housing project.

Evidence was presented that approximately four months after Cleveland's arrest, Cheeks was arrested for trafficking in cocaine after purchasing 2.9 ounces of cocaine in Atlanta and transporting it to Gainesville in a borrowed car with two other individuals who were never apprehended. There was also evidence that Cleveland had no prior narcotics arrests, convictions, or guilty pleas. Neither Strickland nor Cheeks was charged.

1. Cleveland contends that the court erred in refusing to charge the jury that OCGA § 16-13-31 (a) (1) requires the State to prove that defendant knew or should have known the cocaine he possessed weighed 28 grams or more.

OCGA § 16-13-31 (a) (1) provides, as charged by the court: "Any person who . . . is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . commits the felony offense of trafficking in cocaine. . . ."

After the jury had begun deliberations, it asked the court whether, in order to be guilty of trafficking in cocaine, defendant must have known that he was in possession of 28 grams or more of cocaine. In response, the court re-charged the jury on the cocaine trafficking statute and on certain general principles. Cleveland maintains that the court erred in not giving an affirmative answer.

Under the cocaine trafficking statute, the State must show as an

element the minimum amount of 28 grams, after which the quantity possessed bears only on punishment. *Partridge v. State*, 187 Ga. App. 325, 327 (3) (370 SE2d 173) (1988). The amount of 28 grams was designated by the legislature as the basis for distinguishing the crime of trafficking from the somewhat less serious crimes. *Bassett v. Lemacks*, 258 Ga. 367, 370 (2) (370 SE2d 146) (1988). The trafficking statute explicitly requires as the mens rea that defendant know he or she possesses the substance and know it is cocaine. See generally *Tift v. State*, 133 Ga. App. 455, 456 (2) (211 SE2d 409) (1974). The statute is not, however, reasonably subject to the construction urged, that defendant must know or should know the substance possessed weighs at least 28 grams. The court did not err in refusing to instruct the jury of such a requirement.

2. In view of our holding in Division 1, Cleveland's second enumeration is moot.

3. The third enumeration points to the refusal to charge the jury, in accordance with *Henderson v. State*, 255 Ga. 687, 689 (1) (341 SE2d 439) (1986), that "evidence that someone other than the defendant committed the crimes may be enough to raise a reasonable doubt as to the defendant's guilt even though the evidence would not be sufficient to convict someone else."

" 'Though this language was taken from a decision by (the Georgia Supreme Court), the court properly refused to give it. It is not always proper for the court to charge the jury in language used in one of the decisions of the (appellate) court. Sometimes the language is argumentative. . . .' [Cit.]" *Ellerbee v. State*, 215 Ga. App. 102, 105 (6) (449 SE2d 874) (1994). That statement fits here.

4. The last contention is that the court erred in replacing a juror with an alternate after deliberations had begun because it was not manifestly necessary to do so.

During jury deliberations, a note was sent out, and the court recalled the jury to the courtroom. The foreperson announced that the jury had reached a decision on some of the counts but was hung on others. The vote was eight to four on one and evenly divided on the other. The court advised that it would permit the jury to disperse for the day and commence again the next morning with a further charge. The foreperson asked for more time that day, the court gave an *Allen* charge, and the jury continued its deliberations. It did not reach a verdict but, when asked, advised the court it wished to recess until the next morning. Before the jurors left, one juror asked what role the alternates play and was advised by the court that they were used to replace ill jurors or in other emergencies. The court also responded to a question about work emergencies.

Shortly after the jury reconvened the next morning, one juror indicated that he had an emergency, in that he had a possibly cancerous

growth on the back of his ear which was visible, the growth was getting larger and needed to be taken off as soon as possible, and an operation to remove it had been scheduled for that day. He provided documentation to substantiate his request. The court had the juror return to the jury room, announced that this constituted a medical emergency and the court would not make the juror stay, and asked if either party objected. The State did not, but defendant moved for a mistrial on the ground that it appeared, from the questions asked earlier and the new request of the juror, that the system was being manipulated to avoid deadlock. The court disagreed, found the request to be legitimate, and called the alternate, the foreperson, and the juror who asked to be excused. After the court announced that the juror would be replaced, the foreperson asked if the jury could continue deliberations because it was close to a decision. The court suggested that it could call the doctor and advise that the juror would be a little late, and the affected juror said that would be "just fine."

On second thought, the court feared the legal ramifications of returning a juror after announcing he was excused, and since neither party suggested otherwise, the court replaced him. Defendant again sought a mistrial, which was denied, on the ground the system was tainted because the juror who was excused may have been favorable to him.

OCGA § 15-12-172 authorizes the trial court to replace a juror who "dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause. . . ." "The statute implicitly authorizes the trial court to exercise its discretion with regard to excusing a juror from the panel." *Baptiste v. State*, 190 Ga. App. 451, 453 (2) (379 SE2d 165) (1989).

This case differs significantly from *Stokes v. State*, 204 Ga. App. 141, 142 (418 SE2d 419) (1992), in that no legal cause was shown for excusing the jurors who simply indicated they were not prepared to vote. No effort was made to resolve the problem so they could fulfill their duties. In *Green v. Zant*, 715 F2d 551 (11th Cir. 1983), and *Peek v. Kemp*, 746 F2d 672 (11th Cir. 1984), which are relied upon by Cleveland, the court dismissed jurors without questioning them based upon a misapprehension that they were ill. Here the juror had a scheduled surgery and obvious apprehension about his medical condition. Although the court may not have excused him had it first inquired and discovered that a verdict might be reachable without jeopardizing the scheduled surgery, it was not an abuse to do so. Hurrying to a verdict because of anxiety about keeping an important medical appointment relating to the juror's own health could itself infect the verdict. *Graham v. State*, 171 Ga. App. 242, 249 (5) (319 SE2d 484) (1984), is another case in which illness authorized excusing a juror.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

Decided October 3, 1995.

*Scott C. Gladstone*, for appellant.

*J. Tom Morgan, District Attorney, Desiree S. Peagler, Assistant District Attorney*, for appellee.