## A11A0548. HARRISON v. THE STATE.
### (711 SE2d 35)

BLACKWELL, Judge.

Brian Harrison and a co-defendant were tried by a Hall County jury and convicted of trafficking in cocaine in violation of OCGA § 16-13-31 (a) (1). Harrison appeals from the judgment of conviction, asserting that the trial court erred when it failed to excuse a prospective juror for cause and when it refused to give a jury charge that Harrison requested. We see no reversible error and affirm.

1. Harrison contends that the trial court erred when it failed to excuse a certain prospective juror for cause after this juror said that she could not understand why an innocent person might not testify at trial in his own defense. A trial court should excuse a prospective juror for cause when it appears that the juror "holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's charge upon the evidence." *Daniel v. State*, 296 Ga. App. 513, 521-522 (6) (675 SE2d 472) (2009) (citation and punctuation omitted). A trial judge is uniquely positioned to evaluate whether a prospective juror can render an impartial verdict, considering that the trial judge, unlike appellate judges, can observe a prospective juror in person and take account of her demeanor and countenance, not just the words that she speaks. Accordingly, a trial court is vested with discretion to determine whether a prospective juror ought to be excused for cause, and we will disturb an exercise of this discretion only upon a showing of abuse. See *Blankenship v. State*, 301 Ga. App. 602, 605 (3) (688

---

SE2d 395) (2009). We see no abuse of discretion in this case.

Here, during the voir dire of the prospective jurors, one juror wondered aloud why an innocent person might not want to testify in his own defense. This juror explained that, if she were wrongly accused of a crime, she would want to testify, and that she "wouldn't understand why [an innocent person] wouldn't want to [testify]." Upon further questioning, she admitted that good reasons unknown to her might cause an innocent person to decline the opportunity to testify, explaining that "I don't know all the legalities of . . . why would you want to and why would you not." This potential juror then stated that, if Harrison or his co-defendant chose not to testify and the court instructed the jury that it could not hold this choice against either defendant, she "would be okay with it," although she still might wonder why they chose not to testify.

Harrison and his co-defendant both moved to excuse this potential juror for cause, but the trial court denied these motions, finding that this juror could follow the charge of the court, notwithstanding that she wondered why an innocent person would not testify. The trial court explained:

> Well, my take on [this juror] was that she—if it were her in the defendant's shoes, she would be chomping at the bit to get on the stand. That's the point she was making. And so if he didn't, she would wonder why he didn't. But she said she could follow my instruction not to hold it against him for not doing it. And I think it is akin to, you know, I see people with purple hair, I wonder—I would never dye my hair purple and I wonder why they would do it, but I could not hold it against them if I was on the jury. Oh, the better example of that is all of these . . . body piercings. I'm going to wonder why they do it, but I don't hold it against anybody. I wonder.

In light of the unique position of the trial court to observe and evaluate this prospective juror, we accept its assessment of the juror. As the trial judge said, that one might find the choices of another curious or strange does not mean that one necessarily would hold those choices against the other. Nothing in the record here shows that the prospective juror at issue had prejudged any issue in the case.[1] And this prospective juror not only said that she could follow an instruction that the jury must not hold against a defendant his choice not to testify, but she also said that she would hold the State

---

[1] Indeed, this juror twice referred during voir dire to the possibility that Harrison and his co-defendant might be "wrongly accused."

to its burden of proof. In these circumstances, the trial court did not abuse its discretion when it refused to excuse this prospective juror.[2]

2. Harrison also contends that the trial court erred when it refused to charge the jury that it could convict Harrison of trafficking in cocaine only if the State proved beyond a reasonable doubt that Harrison knew that the cocaine in his possession had a weight of 28 grams or more. According to OCGA § 16-13-31 (a) (1), a person commits the offense of trafficking in cocaine when he is "knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine." It is perfectly clear that, to prove a violation of this subsection of the statute, the State must prove that the defendant possessed a substance, that the substance was cocaine or a mixture with a purity of 10 percent or more of cocaine, and that the quantity of the substance was 28 grams or more. It also is perfectly clear that the State must prove that the defendant did so knowingly. But it is less clear whether this knowledge requirement pertains only to possession of the substance (that the defendant knew he had the substance, whatever it might be, in his possession), to the nature of the substance (that the defendant knew it was cocaine or a mixture with the requisite purity), to the weight of the substance (that the defendant knew it was 28 grams or more), or to all three.

In *Barr v. State*, 302 Ga. App. 60, 61-62 (1) (690 SE2d 643) (2010), and *Cleveland v. State*, 218 Ga. App. 661, 663 (1) (463 SE2d 36) (1995), we held that OCGA § 16-13-31 (a) (1) requires proof that the defendant knew that he possessed a substance and knew that the substance contained some amount of cocaine, but it does not require proof that the defendant knew the purity or weight of the substance. But a reasoned analysis of the words of the statute appears nowhere in these opinions, notwithstanding that the words of a statute—at least when those words are clear and unambiguous—are the exclusive means of interpreting it, *Northeast Atlanta Bonding Co. v. State of Ga.*, 308 Ga. App. 573, 575 (1) (707 SE2d 921) (2011), and notwithstanding also that, consistent with principles of due process, statutes defining the elements of crimes especially ought to be afforded their plain meaning. See *United States v. Harriss*, 347 U. S. 612, 617 (I) (74 SC 808, 98 LE 989) (1954) ("The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle

---

[2] Although our decision is not based on these facts, we note that the prospective juror at issue was not seated on the jury that tried this case and, in any event, that Harrison ultimately elected to testify at trial.

is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."); see also *State v. Luster*, 204 Ga. App. 156, 157 (1) (a) (419 SE2d 32) (1992) (noting that a purpose of the criminal code is to give fair warning of the nature of the conduct forbidden and the sentence authorized upon conviction, and explaining that statutory language should be assigned its ordinary, logical, and common meaning). Harrison asserts that *Cleveland* and *Barr* are wrongly decided and should be overruled, and he argues plausibly that the plain meaning of OCGA § 16-13-31 (a) (1) requires proof of knowledge as to all of the elements of trafficking, including weight, noting that, as the United States Supreme Court explained in *Flores-Figueroa v. United States*, 556 U. S. 646 (II) (129 SC 1886, 173 LE2d 853) (2009), "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." Nevertheless, we conclude that this case does not require us to revisit *Cleveland* and *Barr* because, even if Harrison were right, and even if *Cleveland* and *Barr* were wrongly decided, the refusal of the trial court in this case to give the instruction that Harrison requested was not reversible error.

(a) When we review a refusal to give a requested instruction, we must look to the jury charge as a whole, and if the jury charge as a whole accurately and fully apprised the jury of the law to be applied in its deliberations, then the refusal to give an additional instruction, even if that additional instruction were accurate, does not amount to error. See *Coleman v. Fortner*, 260 Ga. App. 373, 375 (1) (b) (579 SE2d 792) (2003). Here, the trial court instructed the jury, in pertinent part:

> Any person who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine commits the offense of trafficking in cocaine. . . . Knowledge on the part of the defendant that the crime of trafficking cocaine was being committed and the defendant knowingly and intentionally participated in or helped in the commission of such crime must be proven by the State beyond a reasonable doubt. If you find from the evidence in this case that the defendant had no knowledge that the crime charged was being committed or that the defendant did not knowingly and intentionally commit, participate or help in the commission of the crime charged, then it would be your duty to acquit the defendant. On the other hand, should you find beyond a reasonable doubt that the defendant had knowledge that the crime charged was being committed and that the defendant know-

ingly and intentionally participated or helped in the commission of it, then you would be authorized to convict the defendant.

The trial court did *not* charge the jury that the State was *not* required to prove knowledge of weight.

With respect to the plain meaning of the statute, Harrison argues that English-speaking people commonly would understand the phrase "knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine" as referring to possession with knowledge of, among other things, the weight of the cocaine or mixture. If that is so, then the charge of the trial court, which used precisely the same phrase, undoubtedly was understood by the jury to mean that the State was required to prove knowledge of, among other things, the weight.

The trial court also charged the jury that "[k]nowledge on the part of the defendant that the crime of trafficking cocaine was being committed . . . must be proven by the State beyond a reasonable doubt." Trafficking in cocaine in violation of OCGA § 16-13-31 (a) (1), of course, requires a substance having a weight of 28 grams or more, so a defendant could not possibly know that the offense of trafficking is being committed without knowing at the same time that 28 grams or more of a substance containing cocaine are involved. The trial court may not have used the precise words that Harrison preferred, but even if Harrison is right about the plain meaning of OCGA § 16-13-31 (a) (1), the charge accurately and fully apprised the jury of the applicable law, and the failure of the trial court to give the requested instruction is not error.

(b) Moreover, even if it were error to fail to give the requested instruction, the error was harmless in the circumstances of this case. When a trial court errs by refusing to instruct the jury as to a particular element of the crime of which the defendant is convicted, but the evidence as to that element is so overwhelming that it is highly probable that the refusal of the instruction contributed in no way to the verdict, the error is harmless. *Braley v. State*, 276 Ga. 47, 53 (30) (572 SE2d 583) (2002). Here, the evidence at trial showed that the mixture of which Harrison was convicted of possessing—a mixture with a purity of nearly 32 percent cocaine—weighed 106.84 grams, more than three-and-a-half times the trafficking threshold of 28 grams and was contained in a clear, plastic bag underneath a vehicle seat in which Harrison was sitting. Harrison testified and admitted that he previously had dealt cocaine, had previously handled 25 grams of cocaine, and was familiar enough with the weight of cocaine to know that 106 grams is not a "street level amount." And the jury heard evidence of a similar transaction in

which Harrison was in possession of a bag containing 25 grams of cocaine. Because the trafficking conviction in this case is based on the possession of a cocaine mixture that weighed far more than 28 grams, and because the evidence was overwhelming that Harrison had enough experience handling cocaine to know that the cocaine under his seat—which, the jury evidently believed, was in his possession—weighed more than 28 grams, we think there is no reasonable probability that an explicit instruction on knowledge of weight would have produced a different result in this case.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED APRIL 29, 2011 — 

*Brett M. Willis, H. Bradford Morris, Jr.,* for appellant.
*Lee Darragh, District Attorney, Jennifer C. Bagwell, Assistant District Attorney,* for appellee.