## A11A1236. WILSON v. THE STATE.
### (718 SE2d 31)

MILLER, Presiding Judge.

A jury found Justin Thomas Wilson guilty of trafficking in marijuana (OCGA § 16-13-31 (c)), possession of marijuana with intent to distribute (OCGA § 16-13-30 (b)), and possession of marijuana (OCGA § 16-13-30 (a)). Wilson appeals, contending that (i) the trial court erred in denying his motion to suppress evidence; (ii) the evidence was insufficient to sustain his trafficking in marijuana conviction since the State failed to prove that he had knowledge that the amount of marijuana in his possession met or exceeded the requisite for trafficking; (iii) the trial court erred in charging the jury that his knowledge of the quantity of marijuana was not an element of the trafficking offense; and (iv) his trial counsel rendered ineffective assistance to the extent that he failed to object to the trial court's erroneous jury charge. Discerning no error, we affirm.

The record shows that Wilson was jointly indicted with his co-defendants, Daniel Park and Jose David Salinas, Jr., for the drug offenses. Both Wilson and Park were convicted during separate jury trials. In *Park v. State*, 308 Ga. App. 648 (708 SE2d 614) (2011), we affirmed Park's conviction. The evidence adduced during Wilson's trial was essentially the same as that presented at the trial of co-defendant Park. Viewed in the light most favorable to the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the trial evidence showed as follows:

> [O]n April 4, 2008, a suspicious package addressed to [Wilson's] residence in Hall County was misdirected to [Wilson's] neighbor. The package was a medium-sized box bearing the name "Abby." After retrieving the package, the neighbor noticed that the package was . . . "soggy" and

"had a funny smell to it." ... [T]he neighbor took [the package] to her father for his inspection. When her father opened the package, they observed a grass-like substance wrapped in plastic. They suspected that the substance was marijuana and called the police.

The responding officers took custody of the package and launched an investigation. The investigating detective identified the substance in the package as marijuana based upon his training and experience. Subsequent testing of the substance further confirmed that it was marijuana, weighing 12.46 pounds.

On the same afternoon that the package was received, the officers arranged a controlled delivery to the address that was listed on the package. An investigator, disguised as a postal carrier, made the delivery, while other undercover officers provided backup and surveillance nearby. When the investigator knocked on the door to the residence, ... Wilson answered. The investigator asked Wilson if "Abby" was present. Wilson responded, "no[,] but they were expecting the package and he would accept delivery of it." Wilson signed the delivery form, using a fictitious name, and took possession of the package containing the drug contraband. When Wilson attempted to take the package inside the residence, the investigator gave the takedown signal to the other agents and secured the package from Wilson's possession. Wilson was placed on the ground and was detained in handcuffs.

Through the open door of the residence, the officers observed the presence of four adult occupants. The officers entered the residence, performed a protective sweep, and secured all of the occupants. During the protective sweep, the officers observed a marijuana grinder, marijuana stems, and plastic baggies in plain view on a table in the bedroom identified as belonging to [Wilson's roommate,] Park.

Following the protective sweep, the officers requested and received Wilson's consent to search the common areas of the residence. During the search, the officers discovered marijuana in a baggie located in a bathroom and additional baggies containing marijuana residue in the kitchen.

After Wilson was arrested, he was advised of his rights under *Miranda*.[1] Wilson agreed to cooperate with the investigation and informed the officers that his roommate, Park,

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

had advised him that the package of marijuana would be shipped to the residence and that the package was for [Park's] friend, David Salinas.

(Punctuation omitted.) *Park*, supra, 308 Ga. App. at 648-649.

Wilson, Park, and Salinas were arrested and jointly indicted for multiple drug offenses. Wilson filed a pretrial motion to suppress the evidence, contending that the officers' warrantless entry and search of the residence were unauthorized and that his consent to the search was involuntary. Following a hearing, the trial court denied Wilson's motion, finding that the warrantless entry and search were authorized based upon exigent circumstances and, alternatively, based upon Wilson's consent.

The statements provided by Wilson to the officers during the investigation had been recorded by audiotape and were played for the jury at trial. Wilson testified at trial, admitting that Park had told him that a package of marijuana was being shipped to the residence, that he had accepted delivery of the package despite knowing that it was addressed to a person who did not reside there, and that he signed for the package using a false name. At the conclusion of the trial, the jury found Wilson guilty of the drug offenses.

1. Wilson contends that the trial court erred in denying his motion to suppress the drug evidence and his statements since the warrantless entry and search of his residence were illegal. He argues that no exigent circumstances existed to authorize the entry and search, and that his consent to the search was not freely and voluntarily given. In this regard, Wilson raises the same arguments that were presented and decided in the prior appeal of his co-defendant, Park. See *Park*, supra, 308 Ga. App. at 650-653 (1). Wilson's arguments fail for the same reasons explained in our decision in *Park*. See id.

2. Wilson further contends that the evidence was insufficient to sustain his trafficking in marijuana conviction, arguing only that the State failed to prove that he had knowledge of the weight of the marijuana that was in his possession. Again, Wilson's arguments are unavailing.

OCGA § 16-13-31 defines and proscribes the offense of illegal drug trafficking. Wilson was convicted of marijuana trafficking under subsection (c) of that statute, which provides in pertinent part that "[a]ny person who knowingly . . . has possession of a quantity of marijuana exceeding 10 pounds commits the offense of trafficking in marijuana[.]" OCGA § 16-13-31 (c). The marijuana trafficking provision is substantially analogous to the cocaine trafficking provision found in the same statute. See OCGA § 16-13-31 (a) (1) ("Any

person . . . who is knowingly in possession of 28 grams or more of cocaine or of any mixture with a purity of 10 percent or more of cocaine . . . commits the felony offense of trafficking in cocaine[.]'"). In the context of the cocaine trafficking provision, this Court has rejected the premise that the defendant must know or should know the weight of the substance possessed:

> Under the cocaine trafficking statute, the State must show as an element the minimum amount of 28 grams, after which the quantity possessed bears only on punishment. The amount of 28 grams was designated by the legislature as the basis for distinguishing the crime of trafficking from the somewhat less serious crimes. The trafficking statute explicitly requires as the mens rea that defendant know he or she possesses the substance and know it is cocaine. The statute is not, however, reasonably subject to the construction urged, that defendant must know or should know the substance possessed weighs at least 28 grams.

(Citations omitted.) *Cleveland v. State*, 218 Ga. App. 660, 662-663 (1) (463 SE2d 36) (1995). We recently applied and upheld the *Cleveland* ruling in *Barr v. State*, 302 Ga. App. 60, 61-62 (1) (690 SE2d 643) (2010). Wilson does not argue that there is any reasonable basis for distinguishing the mens rea requirement of marijuana trafficking from that of cocaine trafficking. Rather, he suggests that the rulings in *Barr* and *Cleveland* were erroneous and should be overruled. We disagree and decline to do so.[2]

> All statutes are presumed to be enacted by the General Assembly with full knowledge of the existing condition of the law and with reference to it, and are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect are to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the courts.

(Citations and punctuation omitted.) *Schlomer v. State*, 247 Ga. App.

---

[2] In *Harrison v. State*, 309 Ga. App. 454, 456-457 (2) (711 SE2d 35) (2011), we recently questioned whether the knowledge requirement of the cocaine trafficking statute applied to the weight of the substance. We nevertheless did not overrule the decisions in *Barr* and *Cleveland*. Id. at 457 (2). Rather, we concluded that there was no need to revisit those decisions since the trial court's refusal to give a jury instruction on the issue was harmless in light of the evidence establishing the defendant's guilt of the trafficking offense. Id. at 458-459 (2) (b).

257, 259 (1) (543 SE2d 472) (2000). In addition, "we must construe the statute in accordance with the legislature's real intent and meaning and not so strictly as to defeat the legislative purpose." Id. Notably, OCGA § 16-13-31 has been amended several times since the issuance of the *Cleveland* decision. See Ga. L. 1997, p. 1311, § 5; Ga. L. 2003, p. 177, § 4; Ga. L. 2003, p. 257, § 1. The General Assembly was presumably aware of the *Cleveland* decision, which rejected the statutory construction urged regarding the defendant's knowledge as to the weight of the drug substance, but it did not amend OCGA § 16-13-31 to alter that holding. We do not believe that the legislative intent of the drug trafficking statutory scheme is to require proof of the defendant's subjective knowledge as to the precise weight of the drugs in his possession. Consistent with the rulings in *Barr* and *Cleveland*, we conclude that Wilson's knowledge of the precise weight of the drugs in his possession was not required to sustain his drug trafficking conviction.[3] See *Barr*, supra, 302 Ga. App. at 61-62 (1); *Cleveland*, supra, 218 Ga. App. at 662-663 (1).

3. Wilson also claims that the trial court erred in charging the jury that his knowledge of the quantity of marijuana was not an element of the marijuana trafficking offense, and that his trial counsel rendered ineffective assistance in failing to object to the erroneous jury charge. In light of our ruling in Division 2 above, however, the jury charge was not erroneous, and no basis for reversal has been shown. See *Cleveland*, supra, 218 Ga. App. at 662-663 (1).

*Judgment affirmed. Ellington, C. J., and Doyle, J., concur.*

DECIDED OCTOBER 4, 2011 —
RECONSIDERATION DENIED OCTOBER 20, 2011 —

*Collins & Csider, Arianne E. Mathé,* for appellant.
*Lee Darragh, District Attorney, Shiv Sachdeva, Assistant District Attorney,* for appellee.

---

[3] The trial evidence sufficiently established that Wilson knowingly possessed the marijuana and had agreed to accept delivery of the package of marijuana at his residence. The trial evidence further established that subsequent testing confirmed that the substance was marijuana, weighing 12.46 pounds. Wilson's conviction of the trafficking offense was therefore authorized. See OCGA §§ 16-2-20 (a), (b) (3) (authorizing convictions of persons who are parties to a crime), 16-13-31 (c) (defining marijuana trafficking offense); *Park,* supra, 308 Ga. App. at 654 (2) (concluding that defendant's conviction for trafficking in marijuana was authorized since he participated as a party to the drug offense and had agreed to accept delivery of the package of marijuana at his residence).