**THIRD DIVISION
BARNES, P. J.,
BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**May 30, 2014**

# In the Court of Appeals of Georgia

A14A0365. PRADO v. THE STATE.

BARNES, Presiding Judge.

This is the second appearance of this criminal case before this Court. Raul Prado was charged with trafficking in marijuana, and in *Prado v. State*, 306 Ga. App. 240 (701 SE2d 871) (2010) ("*Prado I*"), we affirmed on interlocutory appeal the trial court's denial of his motion to suppress the contraband seized from a residence and a recreational trailer. After our decision, Prado was tried before a jury and convicted of the charged offense. On appeal from the denial of his motion for new trial, Prado contends that the trial court erred in denying his motion in limine to exclude evidence of the surveillance and search of the residence; in denying his motion for mistrial based on a comment about his arrest made by the prosecutor during opening

statements; and in declining to give his request to charge on the knowledge element of trafficking in marijuana. Discerning no error, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). Guided by this standard, we turn to the evidence in this case, which we summarized in *Prado I*:

> Interstate police cooperation led Gwinnett County police to conduct surveillance of 2851 Creekwood Drive in Snellville, a suspected marijuana "grow house." Certain observations during surveillance on March 1, 2007, caused officers to apply for a search warrant. While awaiting the warrant, police observed a Dodge Ram pickup truck towing a large recreational trailer emerge from the back yard, followed by a white Chevrolet Tahoe. Officers stopped the vehicles. Alfredo Hernandez was driving the Ram, Raul Prado was driving the Tahoe, and Blanca Cruz-Prado was his passenger.

> After the officers stopped the vehicles, they observed two men walk around from the back of the house, enter the garage, close the door, and then flee into the woods. Officers chased and arrested the men[.] They were later identified as Carlos Luis Perez and his father, Carlos Perez Martinez.

> Meanwhile, a K-9 officer was summoned to the scene of the vehicular stop, and the officer's drug detection dog alerted to the

2

vehicles. Officers detained Hernandez and the Prados while awaiting the arrival of the search warrant for the residence. Upon executing that warrant, officers discovered a marijuana growing operation in the basement [and in one of the bedrooms. ] Perez, Martinez, Hernandez, and the Prados were arrested[.]

The Dodge Ram and the Tahoe were impounded, and the police obtained and executed search warrants for the vehicles. Although officers did not find any contraband in the Prados' Tahoe, they discovered 900 pounds of marijuana and over $99,000 in cash hidden in [a specially constructed compartment underneath the floorboards of] the trailer attached to the Dodge Ram.

*Prado I*, 306 Ga. App. at 240-241.[1]

Raul Prado initially was arrested and indicted on charges relating to the marijuana found both in the Creekwood Drive residence and the recreational trailer attached to the Dodge Ram. Subsequently, the State dismissed the counts of the indictment relating to the residence and proceeded to trial only on Count 3, which charged Prado with trafficking in marijuana based on the drugs hidden in the trailer. The State alleged that Prado owned the trailer and the Dodge Ram that towed it, and

---

[1] Some of the specific facts detailed in *Prado I* that were introduced at the motion to suppress hearing were not introduced at trial, and those facts have been omitted from our factual recitation here.

3

that he knowingly participated with Hernandez and his wife, Blanca, in the transport of the marijuana.

Because the State was dismissing the charges against Prado pertaining to the Creekwood Drive residence, Prado filed a motion in limine seeking to exclude any evidence relating to the reason why the police had the residence under surveillance, the details of the arrests of other suspects at the residence, and the search of the residence. The trial court held two pretrial hearings addressing Prado's motion in limine, where the State conceded that the marijuana that was seized from the trailer, which was already packaged, did not appear to be of the same type of marijuana that was hydroponically grown in the residence. However, the State argued that evidence relating to the surveillance and search of the residence was relevant and admissible as part of the res gestae of the charged crime because it was part of the circumstances of Prado's arrest. The trial court agreed with the State and denied the motion in limine.

At the ensuing trial, the State introduced, through the testimony of several law enforcement officers, evidence regarding why undercover officers had been outside the Creekwood Drive residence at the time in question; the flight of the two men from the garage of the residence into the woods; how the Dodge Ram towing the trailer had

4

been parked outside the residence; the close proximity of the Tahoe driven by Prado to the Dodge Ram towing the trailer; and the reason the Dodge Ram and Tahoe were stopped that day. The State also introduced officer testimony and photographs showing the marijuana growing operation that had been set up in the bedroom and basement of the residence that was uncovered when the search warrant was executed there.

In addition to evidence relating to the Creekwood Drive residence, the State introduced officer testimony and photographs pertaining to the search of the trailer attached to the Dodge Ram and the discovery of the marijuana and cash in the hidden compartment underneath the trailer's floor. The State also introduced motor vehicle records reflecting that Prado owned the Dodge Ram and that the license tag on the trailer was registered to him.

To link Prado to the vehicles, the State also introduced photographs showing the letters "YHWH" displayed on the front grill and front roof area of the Tahoe, the back windshield of the Dodge Ram, and the side door, inside, and back of the trailer, the significance of which was explained by Prado's then ex-wife, Blanca,[2] who

_____

[2] Blanca and Prado divorced between the time of their initial arrest and the trial in this case. Drug-related charges remained pending against Blanca at the time of Prado's trial.

5

testified for the State through an interpreter. Blanca testified that "YHWH" was a symbol for the name of God and that Prado displayed it on all of his vehicles, at the entrance to his ranch in Texas, and inside their former house.

Although she denied knowing about any of the marijuana, Blanca testified about Prado's connection to the trailer and about her trip with Prado and Hernandez that ended in their arrest. Blanca testified that the trailer belonged to Prado and had been parked at their ranch for approximately two years before they were arrested. According to Blanca, she and Prado had taken approximately 12-13 trips in the trailer. Through Blanca, the State admitted a photograph taken before their arrest that showed Prado standing in front of the trailer.

Blanca testified that she rode with Prado in the Tahoe to Georgia from their ranch in Texas, while Hernandez drove the Dodge Ram towing the trailer. Prado and Hernandez would communicate by radio as they drove. According to Blanca, Prado told her that they were headed to Miami but would not be staying there for very long. Blanca further testified that during their trip, they decided to visit some of Hernandez's friends who lived in Georgia. When they arrived at the Creekwood Road residence on the night before they were arrested, she heard Prado instruct Hernandez

6

"not to move the trailer from where it was parked because it was at night and it would call attention to the matter."

Blanca and Prado left and stayed in a hotel room overnight while Hernandez stayed at the residence. Blanca testified that the following day, they returned to the residence, and Prado "was upset because he saw that the trailer was on the side of the house and not in the place where it had been left before[,] and then [they] went into the house." According to Blanca, she stayed in the living room watching television while Prado, Hernandez, and Hernandez's friends talked in another room. Blanca also testified that when the officers stopped them in the Tahoe after they exited the residence, Prado told her that "what was in the truck and the trailer wasn't his" and "just to follow along." Additionally, Blanca testified that after they were released on bail, she overheard Prado "making fun" of the police for taking so long to find the marijuana and cash in the trailer because it had been "very well hidden."

After the State rested, Prado called Hernandez as a defense witness, and he testified through an interpreter. Despite the fact that Hernandez had pled guilty to trafficking in marijuana based on the drugs discovered in the trailer, he denied knowing of the marijuana hidden there. Hernandez testified that the trailer belonged to a third party who lived in Texas, that he was holding the trailer as collateral for

7

money owed to him by that third party, and that he had been in the process of driving the trailer from Texas back to his home in Miami at the time of his arrest outside the Creekwood Drive residence. Hernandez further testified that Prado and Blanca had met up with him in Georgia and were traveling with him simply to help him with driving directions because he was unable to read road maps in English. According to Hernandez, they had stopped at the Creekwood Drive residence so that he could visit his friends and pick up some "special" dog collars that they had for him because he bred bulldogs.

Prado also chose to testify in his own defense through an interpreter. Prado testified that he owned three ranches in Texas, that he operated a towing business, and that Hernandez previously worked for him and they were longtime friends. He corroborated Hernandez's version of events, denied owning the trailer, and denied knowing of the marijuana and cash discovered in the trailer or of the marijuana growing operation at the Creekwood Drive residence. Prado admitted that he owned the Dodge Ram, that the license tag on the trailer was registered to him, and that he placed the letters "YHWH" in lots of places because of their significance to him.

After hearing the conflicting evidence, the jury found Prado guilty of trafficking in marijuana based on the drugs found in the trailer. Prado filed a motion for new trial, which the trial court denied. This appeal followed.

1. Prado first contends that the trial court erred in denying his motion in limine to exclude evidence of the surveillance and search of the Creekwood Drive residence. According to Prado, the evidence pertaining to the marijuana growing operation uncovered at the residence was irrelevant, improperly placed his character in issue, and was unduly prejudicial because he was not tried for the marijuana found there and any connection between his arrest and the residence was tenuous. We are unpersuaded.

"The [S]tate is entitled to present evidence of the entire res gestae of the crime." (Citation and punctuation omitted.) *Dryden v. State*, 316 Ga. App. 70, 76 (4) (728 SE2d 245) (2012).[3] Thus,

> [w]hen transactions involving other crimes and the alleged bad character of appellant are so connected in time and event as to be part of the same

---

[3] Because this case was tried in May 2012, Georgia's new rules of evidence do not apply. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").

9

transaction as that for which the accused is being tried, they are admissible as a clear exception to the general rule of inadmissibility of other transactions. The allegedly separate events are admissible in evidence when they are part of a continuous course of conduct, closely connected in time, place and manner of commission.

(Citation and punctuation omitted.) *Cargile v. State*, 261 Ga. App. 319, 322 (3) (582 SE2d 473) (2003). Furthermore, all circumstances surrounding a defendant's arrest, if relevant to the crime charged, are admissible as part of the res gestae of the crime, even if the evidence incidentally places the defendant's character in issue. See *Adkins v. State*, 280 Ga. 761, 763 (3) (632 SE2d 650) (2006); *Scott v. State*, 277 Ga. App. 126, 127 (1) (625 SE2d 526) (2006). The trial court's decision to admit such evidence is reviewed only for an abuse of discretion. See *Conyers v. State*, 234 Ga. App. 830, 832 (1) (507 SE2d 842) (1998).

The trial court did not abuse its discretion in this case. The evidence adduced at trial, when construed in favor of the State, reflected that Prado, Blanca, and Hernandez stopped at the Creekwood Drive residence on their way from Texas to Miami, where they planned to deliver a large amount of marijuana and cash to unknown parties. On the day of his arrest, undercover narcotics officers observed Prado exiting the Creekwood Drive residence with Blanca and entering the Tahoe.

10

The Tahoe then began to drive off in tandem with the Dodge Ram towing the trailer. The parties were detained and later placed under arrest because the Creekwood Drive residence contained an active marijuana growing operation and a drug sniffing dog had alerted to their vehicles. The subsequent search of the vehicles revealed the marijuana and cash hidden in the trailer.

Under these circumstances, the trial court was authorized to find that Prado's stop at the marijuana "grow house" was part of a continuous course of conduct, closely connected in time, place, and manner to his trafficking of the marijuana found in the trailer. Moreover, the surveillance and search of the marijuana "grow house" were part of the circumstances surrounding Prado's arrest. And because Prado denied knowing about the marijuana found hidden in the trailer, evidence that he was observed visiting a large, active marijuana growing operation moments before driving away in tandem with the trailer was relevant to show that he knowingly possessed the drugs inside the trailer.

For these combined reasons, the trial court acted within its discretion in admitting evidence of the surveillance and search of the Creekwood Drive residence as part of the res gestae of the crime. See *Kohler v. State*, 300 Ga. App. 692, 694-695 (1) (686 SE2d 328) (2009) (in case where the defendant was tried for trafficking in

11

cocaine after he delivered certain boxes to a residence under police surveillance, evidence of the large amount of marijuana found in the residence where the defendant was arrested was admissible as part of the res gestae because "the presence of the marijuana was relevant to the issue of [the defendant's] knowledge" of the cocaine in the boxes he delivered); *Mines v. State*, 167 Ga. App. 766, 767-768 (2) (307 SE2d 291) (1983) (in case where defendant was tried for drug possession, evidence of the defendant's activities at establishment "immediately prior to the arrest" was admissible "for the purpose of showing that he did in fact possess the drugs with criminal motive and intent"). Cf. *Scott*, 277 Ga. App. at 127-128 (1) (defendant's admission at time of his arrest of his "connection to a high level drug dealer" was admissible as part of the circumstances of his arrest for trafficking in cocaine).

2. Prado next contends that the trial court erred in denying his motion for mistrial based on a comment about his arrest made by the prosecutor during opening statements. We disagree in light of the curative instruction given by the trial court.

During his opening statement, the prosecutor mentioned that one of the narcotics officers had gone before a magistrate judge and sworn out arrest warrants against Prado and his co-defendants for the offense of manufacturing marijuana at the Creekwood Drive residence. Prado objected and moved for a mistrial on the ground

12

that the jury should not have been informed that he had initially been arrested for manufacturing marijuana at the residence because that charge ultimately had been dismissed by the State. According to Prado, evidence that a warrant was issued for his arrest for the manufacture of the marijuana was highly prejudicial and irrelevant, and the prosecutor should have simply said that the defendants had been arrested without further elaboration.

The trial court denied Prado's motion for mistrial but gave the following lengthy curative instruction to the jury:

> All right. Welcome back, ladies and gentlemen. I'm going to give some instructions at this particular point in time. First of all, I'm going to instruct you to disregard [the prosecutor's] remarks concerning any initial warrants procured in this case. It's irrelevant. It doesn't have anything to do with this case. Bear in mind, I am relying on the fact that you as jurors raised your hand and took an oath that you would follow the law as I give you. And relying upon that, I'm going to move forward accordingly.

> I'm furthermore going to instruct you that anything the lawyers say, in fact, anything I say, during the case is not evidence. Evidence I'll define for you. I've given you a definition before, and I'll give you a definition at the end of the trial. But what the lawyers say and what I say is not evidence. We have a rare exception if there's a stipulation when we announce that, but that will be clear on the record. So you shouldn't

consider that. Right now it's where the evidence is – or expects to be. And bear in mind, it's no more than that. And I'm going to carve out what is proper for your consideration and what is not.

I'm going to remind counsel for the State and instruct you accordingly that Mr. Prado is on trial for the possession of the marijuana as defined in the indictment connected with the motor vehicle and/or trailer. That's it. He is not on trial for any marijuana connected with the Creekwood residence, for any item of property in that evidence. I am merely at this stage allowing you to gather the facts of the circumstances connected with the arrest. So it's not just done – or contemporaneous with that, so that you are able to put that in context.

I'm relying on the fact that as under your oath, that you'll follow the instructions. You'll go solely by the indictment. Because that's solely what he's charged with. That's it. The fact that some other judge in some other court may have done something or not done something concerning this defendant is totally irrelevant. It doesn't amount to anything in this case. And you will disregard it accordingly.

So I'm going to give you that as a curative instruction and instruct you to disregard. And it's always, well, if I hear something, how can I disregard it? Well, you're jurors. You raised your hand. Your swore to follow the law. That's what the law is. And you're going to base your decision solely on the evidence that I admit during this trial, and I don't admit that at all.

So struck. So disregarded.

After the trial court gave this curative instruction, Prado renewed his motion for mistrial, which the trial court denied.

We conclude that the trial court's instruction to the jury adequately cured the impact of the prosecutor's allegedly improper statement about Prado's arrest.

> When prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial. It is up to the trial court to decide whether a mistrial must be granted as the only corrective measure or whether the prejudicial effect can be corrected by withdrawing the [statement] from the consideration of the jury under proper instructions. Considering the nature of the statement, the other evidence in the case, and the action taken by the court . . . concerning the impropriety, we find no abuse of discretion in the denial of [Prado]'s motion for mistrial.

(Citations and punctuation omitted.) *Harding v. State*, 311 Ga. App. 724, 726 (719 SE2d 499) (2011). See *Ramirez v. State*, 279 Ga. 569, 576 (9) (619 SE2d 668) (2005).

3. Lastly, Prado contends that the trial court erred in declining to give his request to charge on the knowledge element of trafficking in marijuana. In his request to charge, Prado requested that the trial court instruct the jury that the State was required to prove beyond a reasonable doubt that the defendant knew what he

possessed was marijuana, and that he knew that the weight of the marijuana was greater than 10 pounds. Prado argues that under OCGA § 16-13-31 (c) (2007),[4] the State was required to prove that he knew that the weight of the marijuana was greater than 10 pounds, and that the trial court should have specifically instructed the jury on this point by giving his requested charge.[5] Pretermitting whether Prado's request to charge was an accurate statement of the law,[6] we conclude that the refusal of the trial court to give the instruction that Prado requested was not reversible error.

---

[4] OCGA § 16-13-31 (c) (2007), in effect at the time of the drug crime in this case, provided in pertinent part: "Any person who knowingly sells, manufactures, grows, delivers, brings into this state, or has possession of a quantity of marijuana exceeding 10 pounds commits the offense of trafficking in marijuana[.]" The General Assembly amended OCGA § 16-13-31, effective July 1, 2013, to omit the word "knowingly" from the statute. See Ga. L. 2013, p. 222, § 4/HB 349. See also id. § 21 ("This Act shall become effective on July 1, 2013, and shall apply to offenses which occur on or after that date. Any offense occurring before July 1, 2013, shall be governed by the statute in effect at the time of such offense.").

[5] Prado does not enumerate as error that the State failed to prove that he knew that the weight of the marijuana was greater than 10 pounds; rather, his enumeration of error pertains solely to the trial court's refusal to give his requested jury charge on the knowledge element.

[6] In the context of the similarly worded trafficking in cocaine statute, OCGA § 16-13-31 (a) (1), our Supreme Court recently overruled several of this Court's cases and held that the statute requires proof that the defendant had knowledge of the weight of the cocaine. See *Scott v. State*, __ Ga. __ (3) (Case No. S13G1042, decided March 28, 2014), overruling *Cleveland v. State*, 218 Ga. App. 661, 662-663 (1) (463 SE2d 36) (1995) and its progeny.

16

In reviewing a trial court's refusal to give a requested jury instruction, we look to the jury charge as a whole to determine if the court committed reversible error. *Harrison v. State*, 309 Ga. App. 454, 457 (2) (a) (711 SE2d 35) (2011). "[I]f the jury charge as a whole accurately and fully apprised the jury of the law to be applied in its deliberations, then the refusal to give an additional instruction, even if that additional instruction were accurate, does not amount to error." Id.

Applying these principles, we conclude that the trial court committed no error in refusing to give Prado's request to charge for the same reasons articulated in *Harrison*, 309 Ga. App. at 456-459 (2). In that case, the defendant was convicted of trafficking in cocaine in violation of OCGA § 16-13-31 (a) (1). *Harrison*, 309 Ga. App. at 454. On appeal, the defendant asserted that the trial court committed reversible error in refusing to specifically instruct the jury that the State had to prove beyond a reasonable doubt that the defendant knew that the cocaine in his possession had a weight of 28 grams or more. Id. at 456-457 (2).

In concluding that the trial court in *Harrison* did not err in refusing to give the defendant's requested charge, we reasoned that even if the State was required to

prove that the defendant knew the weight of the cocaine,[7] the trial court's charge as a whole adequately apprised the jury of that requirement. *Harrison*, 309 Ga. App. at 457-458 (2) (a). We concluded: "The trial court may not have used the precise words that [the defendant] preferred, but even if [the defendant] is right about the plain meaning of OCGA § 16-13-31 (a) (1), the charge accurately and fully apprised the jury of the applicable law, and the failure of the trial court to give the requested instruction is not error." *Harrison*, 309 Ga. App. at 458 (2) (a). Additionally, we concluded that any error in failing to give the defendant's requested charge was harmless under the circumstances of the case. Id. at 458-459 (2) (b).

In the present case, the trial court read Count 3 of the indictment as part of its jury charge, instructing that Count 3 alleged that Prado did "knowingly possess more than 10 pounds of marijuana." The trial court further instructed the jury:

Any person who knowingly has possession of a quantity of marijuana exceeding 10 pounds commits the offense of trafficking in marijuana. . . . Knowledge on the part of the defendant that the crime of trafficking in marijuana as alleged in the indictment was being committed and that the defendant knowingly and intentionally participated in or helped in

---

[7] As noted supra in footnote 6, our Supreme Court recently resolved the knowledge question with regard to the trafficking in cocaine statute. See *Scott*, __ Ga. at __ (3).

18

the commission of such crime must be proved by the State beyond a reasonable doubt. If you find from the evidence in this case that the defendant had no knowledge that the crime was being committed or that the defendant did not knowingly and intentionally commit, participate, or help in the commission of the alleged offense, then it would be your duty to acquit the defendant. On the other hand, should you find beyond a reasonable doubt that the defendant had knowledge that the crime of trafficking in marijuana alleged in the indictment was being committed and that the defendant knowingly and intentionally participated or helped in the commission of it, then you would be authorized to convict the defendant.

These charges on the knowledge element of the crime are substantially similar to the charges given by the trial court in *Harrison*. Furthermore, as in *Harrison*, "[t]he trial court did *not* charge the jury that the State was *not* required to prove knowledge of the weight." (Emphasis in original.) *Harrison*, 309 Ga. App. at 458 (2) (a). Accordingly, under the reasoning of *Harrison*, "[t]he trial court may not have used the precise words that [Prado] preferred, but even if [Prado] is right about the plain meaning of OCGA § 16-13-31[(c)], the charge accurately and fully apprised the jury of the applicable law, and the failure of the trial court to give the requested instruction is not error." *Harrison*, 309 Ga. App. at 458 (2) (a). We therefore discern no basis for reversal.

*Judgment affirmed. Branch, J., concurs.  Boggs, J. concurs in judgment only.*