**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**June 26, 2015**

# In the Court of Appeals of Georgia

A15A0489. SUMMERVILLE v. THE STATE.

MILLER, Judge.

Following a jury trial, Kent Summerville was convicted of marijuana trafficking (OCGA § 16-13-31 (c) (2010)) and driving with a suspended license (OCGA § 40-5-121 (a)). Summerville appeals from the denial of his motion for new trial, contending that the evidence was insufficient to sustain his marijuana trafficking conviction because the statute existing at the time of his offense required the State to prove that he had knowledge the marijuana weighed more than ten pounds and the State failed to prove this element of the offense. Summerville also contends that the State withheld material evidence in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SCt 1194, 10 LEd2d 215) (1963), and that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict; the defendant no longer enjoys the presumption of innocence; and we do not weigh the evidence or determine witness credibility. The standard of review is whether, based on the evidence of record, a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.

(Citations omitted.) *Smith v. State*, 289 Ga. App. 236, 237 (656 SE2d 574) (2008).

So viewed, the evidence shows that on the afternoon of June 30, 2010, Summerville asked two friends, Ashley Brown and Mario Allen, to drive him from Birmingham, Alabama to Atlanta. Brown and Allen agreed, and they picked up Summerville at his apartment at about 7:30 p.m. Summerville drove Brown's vehicle and would not tell her where they were headed.

On the way to Atlanta, the trio smoked marijuana that Summerville provided. Brown also took some Xanax, which caused her to "zone out" and fall asleep for most of the trip.

Brown testified that she woke up when Summerville stopped at a gas station. At the gas station, Summerville met an unidentified bald man driving a Chrysler 300. After briefly talking to the bald man, Summerville drove away from the gas station and followed the man to a house. Summerville entered the house with the man, and he returned to the car a few minutes later to grab a bag. Sometime later, Summerville

and the bald man exited the house. Summerville then returned to the vehicle and opened and closed the trunk, causing Brown to wake up. Allen was sitting in the backseat at the time playing on his phone. Allen testified that he could smell marijuana after Summerville closed the trunk, but thought little of it because they had previously smoked marijuana in the vehicle. Summerville then began driving back to Birmingham.

At about 1:30 a.m., a police officer stationed along Interstate 20 observed that Summerville was driving slowly and causing several tractor-trailers and a recreational vehicle to back up behind him. Summerville did not yield to allow the larger vehicles to pass, and at one point, he abruptly decelerated, causing a dangerous situation for the vehicles behind him. Summerville then crossed the striped line and moved into the right-hand lane, which was occupied by another vehicle. Observing this behavior, the police officer turned on his patrol lights to initiate a traffic stop. Summerville asked Brown if he should stop or keep driving. Brown told him to stop because their small amount of marijuana could be hidden. Summerville responded that he had more than a small amount of marijuana in the car.

Summerville ultimately stopped the vehicle. Upon approaching the vehicle, the police officer smelled a strong odor of burnt marijuana and could see smoke hanging

in the air when Brown rolled down the passenger window. The police officer asked Summerville for his driver's license, and Summerville responded that he did not have one. Summerville handed the officer an identification card, and as he did, his whole arm was trembling. Summerville exited his vehicle at the request of the police officer and consented to a pat-down search. During the pat-down, the police officer smelled a strong odor of burnt marijuana emanating from Summerville and he uncovered approximately $450 in cash from Summerville's front pocket. While discussing the reason for the stop, Summerville admitted that his Alabama driver's license had been suspended.

The police officer began to write Summerville a citation and called for backup. The police officer then asked Brown for consent to search her vehicle because he smelled the odor of burn marijuana. When Brown failed to give a clear response, the police officer asked his backup officer, who had since arrived at scene, to retrieve the backup officer's drug dog so the officers could conduct a free-air sniff of Brown's car. After the drug dog alerted to the presence of narcotics, the police officers began searching the vehicle. During the search, the officers found marijuana debris scattered inside of the vehicle, and they smelled fresh, or unsmoked, marijuana. The police officers continued searching the vehicle and found a large brick of marijuana

4

weighing about 21 pounds located under the spare tire cover. When the police officers were about to place Summerville, Brown, and Allen into custody, Summerville began to move towards traffic and appeared to be getting ready to run. One of the police officers blocked Summerville and arrested him.

1. Summerville contends that the evidence was insufficient to sustain his conviction because the State failed to prove that he had knowledge that the weight of the marijuana was over ten pounds. We disagree.

Former OCGA § 16-13-31 (c) provided in pertinent part that "[a]ny person who knowingly . . . has possession of a quantity of marijuana exceeding 10 pounds commits the offense of trafficking in marijuana[.]" This former code provision was substantially analogous to former OCGA § 16-13-31 (a) (1), the cocaine trafficking provision in effect prior to July 2013.[1] See *Wilson v. State*, 312 Ga. App. 166, 168 (2) (718 SE2d 31) (2011); see also OCGA § 16-13-31 (a) (1) (2010) ("Any person . . . who is knowingly in possession of 28 grams or more of cocaine . . . commits the felony offense of trafficking in cocaine[.]"). The Supreme Court of Georgia has held

_____

[1] In 2013, the General Assembly deleted "knowingly" throughout OCGA § 16-13-31, and the amended statute became effective on July 1, 2013. See Ga. Laws 2013, Act 84, §§ 4, 21. Since the offense in this case occurred in 2010, the former statute applies. See *Scott v. State*, 295 Ga. 39, 42 (2) (757 SE2d 106) (2014).

5

that the plain language of former OCGA § 16-13-31 (a) (1) required that the State prove knowledge of the quantity of the cocaine as an element of the crime. See *Scott v. State*, 295 Ga. 39, 40 (1) (757 SE2d 106) (2014). Since the former marijuana trafficking provision also contains the same "knowingly" language, it follows that the reasoning of *Scott* applies to the former marijuana trafficking provision. Accordingly, the State was required to prove that Summerville knowingly possessed more than ten pounds of marijuana. *Scott*, supra, 245 Ga. at 40 (1).

In determining whether a defendant had the requisite knowledge, a jury may consider

> the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. Indeed, both knowledge and possession may be proved, like any other fact, by circumstantial evidence.

(Footnotes omitted.) *Freeman v. State*, 329 Ga. App. 429, 432 (1) (765 SE2d 631) (2014).

Contrary to Summerville's argument, the State presented sufficient evidence to show that he had knowledge of the weight of the marijuana. Notably, the evidence shows that Summerville refused to provide Brown with driving directions, he met an unidentified man at a gas station, and he followed that man to a house, where he

6

retrieved something from the house and placed it into the trunk of Brown's vehicle. Additionally, Summerville's trip was brief, as he left Birmingham at around 7:30 p.m., stopped in Atlanta only to meet this unidentified male, and then began the return trip to Birmingham after retrieving marijuana from this individual. See *Calixte v. State*, 197 Ga. App. 723, 724 (2) (399 SE2d 490) (1990) (generally, drug traffickers have a short turnaround time on round-trip travel). The marijuana found in the trunk of the car was shrink wrapped and weighed approximately 21 pounds, more than twice the amount of the 10 pounds required to constitute trafficking. See former OCGA § 16-13-31 (c); see also *Freeman*, supra, 329 Ga. App. at 432-433 (1) (the fact that drug quantity was almost twice the trafficking threshold was a significant factor in showing the defendant's knowledge of drug quantity).

Moreover, when the police officer activated his patrol lights, Summerville asked Brown whether to stop. When Brown responded that he should stop because they could hide the small amount of marijuana, Summerville informed Brown that he had more than just a small bag of marijuana in the car. Based on these circumstances, the jury was authorized to conclude that Summerville had knowledge that the recovered marijuana weighed more than ten pounds.

2. Summerville contends that the trial court erred in denying his motion for a new trial on the ground that the State committed a *Brady* violation by failing to disclose prior to trial that it had attempted to lift fingerprints from the packaged marijuana but no usable prints could be obtained. We disagree.

In order to demonstrate a *Brady* violation, Summerville had to show that: (1) the State possessed evidence favorable to him; (2) he did not possess the evidence nor could he obtain it with any reasonable diligence; (3) the State suppressed the evidence; and (4) a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed. See *Blackshear v. State*, 285 Ga. 619, 622 (5) (680 SE2d 850) (2009). Summerville has failed to make such a showing.

First, the fact that there are fingerprints that cannot be processed is neither exculpatory nor inculpatory. See *Williams v. State*, 303 Ga. App. 222, 226 (2) (692 SE2d 820) (2010). More importantly, even assuming *arguendo* that this information was favorable to Summerville and that the State suppressed it, he has failed to establish a *Brady* violation. In light of the overwhelming evidence that it was Summerville who placed the marijuana in the vehicle, there is no reasonable probability that the result of his trial would have been different had he known that no usable prints were found on the marijuana package. See *Blackshear*, supra, 285 Ga.

8

at 622 (5) (no reversible error because the disclosure of any suppressed information would not have changed the outcome of the trial where there was overwhelming evidence of guilt). Consequently, Summerville's *Brady* claim fails.

3. Summerville also contends that trial counsel rendered ineffective assistance.

> To establish an ineffective assistance claim, an appellant must show not only that his counsel's performance was deficient but also that the deficiency so prejudiced him as to create a reasonable probability that but for counsel's errors, the outcome of the trial would have been different. Failure to satisfy both requirements is fatal to an ineffectiveness claim.

(Footnotes omitted.) *Mitchell v. State*, 250 Ga. App. 292, 295-296 (2) (551 SE2d 404) (2001).

(a) Summerville contends that trial counsel was ineffective for failing to request a jury charge that knowledge was a material element of the trafficking offense. We disagree.

Trial counsel in this case testified at the new trial hearing that he did not request a jury charge that the State was required to prove knowledge of the marijuana weight because the law at the time did not support such a request. Summerville was tried and convicted in January 2012. In October 2011, a few months before Summerville's trial, this Court issued *Wilson*, supra, which held that the State was not

9

required to prove knowledge as an element of the marijuana trafficking offense. Accordingly, the trial court did not err in charging the jury that a defendant's knowledge of the quantity of marijuana was not an element of the offense, and the defendant's trial counsel was not ineffective in failing to object to the jury charge. See *Wilson*, supra, 312 Ga. App. at 168-170 (2), (3).

Subsequent to Summerville's trial, the Georgia Supreme Court issued *Scott*, holding that under former OCGA § 16-13-31 (a) (1), the State was required to prove that the defendant had knowledge of the weight of cocaine in order to sustain a conviction for cocaine trafficking. See *Scott*, supra, 295 Ga. at 42 (2) - (3). As discussed above in Division 1, the reasoning of *Scott* applies equally to marijuana trafficking, and the State was required to prove knowledge of the drug quantity for offenses occurring prior to July 1, 2013. See id. at 41-42 (2).

*Scott* was issued after Summmerville's trial, and

> when addressing a claim of ineffectiveness of counsel, the reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial. Thus, a new decision does not apply in a manner that would require counsel to argue beyond existing precedent and anticipate the substance of the opinion before it was issued. The standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law.

10

(Citations and punctuation omitted.) *Maldonado v. State*, 325 Ga. App. 41, 48 (3) (a) (752 SE2d 112) (2013). Since the law at the time of Summerville's trial did not require the State to prove knowledge of the weight of the marijuana, trial counsel was not deficient for failing to request a charge on this issue. Consequently, Summerville's claim that trial counsel was ineffective on this ground fails.

(b) Summerville next contends that trial counsel was ineffective for failing to object to the trial court's *Allen*[2] charge to the jury. We disagree.

After about a day of deliberation, the jury sent a note stating that it was unable to reach a unanimous decision. The State requested an *Allen* charge, and trial counsel asked to review the charge before it was given to the jury. The trial court then informed trial counsel that it planned to give the pattern *Allen* charge, and the court gave that charge to the jury. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.70.70 (3rd ed. 2003). After the jury returned a guilty verdict, the trial court polled the jury members on their verdict. Each juror confirmed that he or she reached a verdict freely and voluntarily.

Summerville argues that the jury charge was impermissibly coercive, but he has not identified any language in the pattern charge that was potentially coercive. See

---

[2] *Allen v. United States*, 164 U. S. 492 (17 SCt 154, 41 LEd 528) (1896).

11

*Scott v. State*, 290 Ga. 883, 888 (6) (725 SE2d 305) (2012) (no error when defendant fails to identify any language in pattern or modified *Allen* charge that was potentially coercive). Although Summerville points to the short length of deliberations following the *Allen* charge as proof of the charge's coerciveness, the fact that the verdict was apparently returned less than an hour later does not render it coercive. See *Scott*, supra, 290 Ga. at 888 (6) (length of deliberations alone cannot make a charge coercive). As a result, the trial court did not err in giving the pattern *Allen* charge to the jury, and trial counsel cannot be said to have been ineffective for failing to object to the charge. See *Sharpe v. State*, 288 Ga. 565, 570 (8) (707 SE2d 338) (2011) (trial counsel not ineffective for failing to object to *Allen* charge where charge was not coercive).

In sum, the trial court did not err in denying Summerville's motion for new trial because the State introduced sufficient evidence to sustain his conviction for marijuana trafficking, there was no *Brady* violation, and trial counsel did not render ineffective assistance.

*Judgment affirmed. Andrews, P. J., and Branch, J., concur*.